HERMAN FREEDMAN ET AL. V. WILLIAM W. CAMPFIELD
AND DENNIS JONES.

*Fraud—Fictitious partnership—Loss of execution—Parol evidence.*

1. Upon proof of the loss of an execution, under which the defend-
ant seeks to justify the seizure of property, he may show by
oral testimony that the execution was properly issued and
levied upon the property, and that notices of sale were duly
posted according to law.

2. It is held that there was a *scintilla* of evidence, upon which
the jury were properly permitted to pass, and which, if
believed, tended to show that the property in dispute belonged
to the execution debtor, who had caused the formation of the
partnership of which plaintiffs claimed to be members for the
purpose of defrauding his creditors.

Error to St. Clair. (Canfield, J.)  Argued April 21,
1892.  Decided June 10, 1892.

Trover.  Plaintiffs bring error.  Affirmed.  The facts
are stated in the opinion.

*William M. Cline* and *Charles K. Dodge,* for appellants.

*Avery Bros. & Walsh,* for defendants.

LONG, J. On January 24, 1889, the defendants in this
suit obtained judgment in justice's court against Jacob
Freedman for $56 damages and $2.75 costs of suit.
February 1, following, execution was issued upon this
judgment, and levied upon a quantity of scrap iron
claimed to belong to Jacob Freedman. Defendants sold
the iron under this execution. Plaintiffs brought this
suit in trover in justice's court for St. Clair county, for
the value of the scrap iron seized by defendants under
their execution. Defendants, under their plea of the
general issue, gave notice that the scrap iron belonged

to Jacob Freedman, and had been seized under the execution issued against the property. After the trial in justice's court the cause was removed to the circuit court for St. Clair county, and there tried before a jury.

It appeared upon that trial that the plaintiffs reside in Detroit, and commenced doing business April 14, 1888, under the firm name of R. Freedman & Co. The plaintiff Herman is the son of Jacob, plaintiff Roony is the wife of Jacob and mother of Herman, and plaintiff Hannah is the wife of Herman. The defendants are partners, doing business under the firm name of Campfield & Co. The iron in question was bought by Jacob Freedman at Port Huron to be shipped to Detroit, but before shipment was seized by defendants and sold, the defendants claiming it to be the property of Jacob. The plaintiffs on the trial claimed that Jacob was their agent in the purchase, and that it was their means that paid for the iron. On the part of the defendants it was insisted and claimed that the so-called firm of R. Freedman & Co. is only a name used by Jacob as a device to defraud his creditors, and that in fact he owns all the property invested in the business, and whatever business is done is in his interest and for his benefit. It was further claimed by the defendants that Jacob Freedman was in prosperous circumstances for many years prior to the formation of the pretended partnership, possessed of considerable property, and conducting business in the same place and in the same way that it is now being conducted by the pretended partnership, which was formed for the sole purpose of defrauding defendants and other creditors; that the plaintiffs, at the time of the claimed formation of the partnership, were not themselves possessed of property or means with which to carry on the business; that it was Jacob's means solely which were used by the firm. This was denied by the plaintiffs.

The court charged the jury upon this issue that if they found the partnership really existed as a *bona fide* partnership, and that the property was bought and paid for by it, and that it really owned these goods, then the plaintiffs would be entitled to recover; but, on the other hand, if the property really belonged to Jacob Freedman at the time it was taken under defendants' writ, and that plaintiffs' partnership was only in name, a matter of convenience, and was used to shield and protect Jacob Freedman from the claims of creditors, the defendants should recover; that the burden of establishing this fraudulent conduct was upon the defendants, as the law presumes men to be honest, and that their dealings are fair and in good faith, and not with the intention of hindering or defrauding creditors.

This charge raises the important question in the case, as it is claimed by plaintiffs' counsel that there was not a *scintilla* of evidence to go to the jury upon which they would be justified in finding that the property belonged to Jacob, and not to the firm, and that the partnership was used by Jacob for the purpose of defrauding his creditors. It would profit no one to set out the testimony here. From a careful reading of it, we are satisfied that there was a *scintilla* of evidence, upon which the jury were properly permitted to pass, and which, if believed, tended to show that the property belonged to Jacob, and that he had caused the formation of this partnership for the purpose of defrauding his creditors, and that it was a mere blind or cover to enable him to do so. The court very properly directed the jury that direct and positive proof of these facts was not required; that they might be proven by other facts and circumstances taken together, from which the inference of fraud might be drawn.

Showing was made that the execution was lost, and

could not be found. The court, therefore, permitted the defendants to show that the execution was properly issued and levied upon the iron, and that notices of sale were legally and duly posted in accordance with the statute. There was no error in this.

We find no error in the record, and the judgment must be affirmed, with costs.

McGRATH, MONTGOMERY, and GRANT, JJ., concurred. MORSE, C. J., did not sit.