FLORENCE A. SANBORN v. MARIETTE C. SANBORN.

*Husband and wife— Abandonment by former—Suit by wife—*
*Parties—Homestead—Deed—Fraud—Mortgage—Absolute*
*conveyance as security—Bill to redeem.*

1. Where .a husband, in order to avoid arrest for a confessed crime, abandons his family and abjures the realm, his wife, for the purpose of suing and being sued, will be regarded by the court as a *feme sole.*

2. A husband is not a necessary party to a suit by his wife to set aside a deed of their homestead, the sole issue in the case being whether or not fraud was practiced upon the wife in the procurement of the deed.

3. A husband, after inducing his wife to join with him in a deed of their homestead, left the country. The wife filed a bill to set aside the deed as fraudulently procured, or, if not annulled, that it be declared a mortgage, and she be allowed to redeem therefrom. And it is held that, regarding the bill as one to redeem, for the protection of both complainant and defendant the husband should be brought in as a party by publication.

4. A deed will not be set aside at the suit of a wife who joined with her husband in its execution to secure his creditor, which indebtedness the wife had advised her husband to secure, on the ground that she was ignorant of the contents of the deed, where it appears that no misrepresentations were made to her at the time she executed the deed, and that she made no inquiry as to its form or contents.

5. A son was indebted to his mother, and, on the third day before leaving the country to avoid arrest for a confessed crime, he executed to his mother a deed, in which his wife joined, of all of his real estate, including his homestead. He took the deed, as also a bill of sale of his interest in a vessel, to his mother, and told her that he had some papers to deliver to her, and, upon being asked by her what they were, answered that she "need not worry any more." At about the same time he executed to his mother a bill of sale of all of his remaining personal property, and placed the same on file in the office of the city clerk. The mother had no knowledge, until after her son had left the country, of the execution of the second

bill of sale. The greater portion of the indebtedness was evidenced by promissory notes, which were not delivered to the son, nor was anything said about their surrender. And it is held that the deed is in fact a mortgage, and the only proper remedy open to the grantee is by a bill to foreclose the same.

Appeal from Saginaw. (Wilber, J.) Argued January 10, 1895. Decided February 26, 1895.

Bill to set aside a deed on the ground of fraud and duress, or, if not set aside, to have it decreed to be a mortgage, and for an accounting. Complainant appeals. Decree reversed, and one entered in this Court in accordance with the opinion. The facts are stated in the opinion.

*L. T. Durand,* for complainant.

*W. G. Gage* (*Camp & Brooks,* of counsel), for defendant.

GRANT, J. Complainant and Lewis D. Sanborn, the son of the defendant, were married February 25, 1885. He was engaged in business in Saginaw, where his mother resided. After their marriage, they lived for some months with the defendant. It is evident that the relations between the complainant and the defendant were not cordial. From the view we take of the case, it is unnecessary to locate the blame. He purchased a home at a cost of about $10,000, in which they lived until the transaction hereinafter stated. They had one child, a girl, born in 1888. Mr. Sanborn committed heavy forgeries, for which he fled December 6, 1890. The defendant had loaned her son money to a large amount, stated by him to his wife to be $12,000, and claimed by the defendant to be about $15,000. On the third day before he fled he signed and executed a deed of all his real estate in Saginaw, including the homestead, to the defendant. The deed was drawn by his attorney, and was executed in his office by Mr. Sanborn. Mr. Sanborn then procured a

notary public and a witness, and took them to his house, where complainant signed and acknowledged the deed. He then took the deed, together with a bill of sale of his interest in a vessel, made out to his mother, and delivered them to her. About the same time he executed to her bills of sale of all his household, office, and stable furniture, including horses and carriages, which he filed in the office of the city clerk. Mr. Sanborn went to his wife's parents, in Milford, Mich., where he was secreted some three or four months, when he fled the country, and when last heard from was in South America. Complainant had had no communication from him for two years prior to the giving of her testimony. His mother, however, was in correspondence with him. The perfidious course and conduct of Mr. Sanborn towards complainant need not be stated. Complainant has lived in and occupied the homestead in Saginaw since his flight, except when visiting her old home. Some time after his departure, defendant sold her own homestead, and she and her daughter went to live with the complainant. They had the exclusive use of a sleeping room, and occupied the rest of the house in common, except the rooms which complainant rented, and by which she largely supported herself and her child. Ill feeling between them was soon manifested. Defendant claimed to own the house, and instituted summary proceedings to eject the complainant. Complainant thereupon filed this bill, praying that the deed be set aside because of the oppression, cruel treatment, and fraudulent conduct practiced by her husband and by defendant upon her, or, if not annulled, that it be decreed to be a security, and that an accounting be had to determine the amount due the defendant, and that the homestead and dower rights of the complainant be protected and preserved for herself and child. Upon filing the bill, a preliminary injunction was granted by the court, Judge Gage presid-

ing, restraining the defendant from selling the property, and from interference with the complainant's possession. An answer, accompanied by affidavits, was filed, and a motion to dissolve the injunction denied. Testimony was taken before a commissioner, and the case brought to a hearing upon pleadings and proofs. The court, Judge Wilber presiding, declined to pass upon the merits of the controversy, but entered a decree that the questions raised should not be determined without making Mr. Sanborn a party, that the defendant was entitled to the possession of the premises, and that the case stand over for such reasonable time as would enable complainant to proceed against him by publication. Complainant appeals, and brings the entire case before us for review.

1. Mr. Sanborn has abandoned his family and his homestead, and abjured the realm. He is in voluntary banishment and hiding, a confessed criminal, to avoid arrest and punishment for a great crime. A wife, under those circumstances, is regarded by the law as a *feme sole* for the purpose of suing and being sued. Story, Eq. Pl. § 71; 6 Amer. & Eng. Enc. Law, 734; *Clark v. Valentino*, 41 Ga. 145; *Love v. Moynehan*, 16 Ill. 278; *Gregory v. Pierce*, 4 Metc. 478. If the sole issue in this case were fraud in the procurement of the deed, the husband would not be a necessary party in a suit by her to protect her homestead interests. *McKee v. Wilcox*, 11 Mich. 358. But, regarding this as a bill to redeem, we think that, for the protection of both complainant and defendant, the husband should be made a party, to be brought into the suit by publication. This will foreclose his interest, and secure a good title to the purchaser at the sale. Complainant will therefore be allowed to amend her bill accordingly.

2. The court should have passed upon the merits of the case, and entered a decree in accordance with his views.

Even if it had been proper to postpone the hearing in order to make Mr. Sanborn a party, the complainant should have been left in possession until the final hearing and a decree entered determining the rights of the parties.

3. We are not aware of any case where this Court has ever before been called on to determine the merits of a chancery suit which have not been passed upon by the circuit court. It would be proper practice to remit the case for such determination. The litigation, however, between these parties should be terminated as soon as possible. This is of special importance to the complainant, who has no means to carry it on. We are therefore disposed to determine the controversy. We think the complainant has failed to make out a case of duress or fraud. No misrepresentation was made to her at the time of the execution of the deed. She knew she was executing a paper to secure the debt which she knew her husband owed the defendant. She had advised him to secure the debt. If she chose to sign and execute the instrument without any inquiry as to its form, or what it contained, she cannot now have it set aside upon the ground that she was ignorant of its contents. A detail of the evidence is unnecessary.

4. We think it established by a fair preponderance of the evidence that this deed was given as security, and as well the bills of sale. Complainant knew nothing about the execution of the bills of sale until after her husband had fled. Neither did defendant have any knowledge of the execution of the bills of sale, except that of the vessel, until after that. The greater part of the indebtedness was evidenced by promissory notes, which she then held, and still holds, against her son. Nothing was said at the time or afterwards about their surrender or cancellation. She had no knowledge of his intention to execute to her

these instruments.  When he went to her house to deliver them, he called his sister into the room with his mother, and what he then said is thus told by the defendant:

"'I have some papers, mother.  I want to put them in your hands.  Mr. Weadock wanted me to, before a witness.'  I asked him what they were, and he said, 'You need not worry any more.'"

It follows that the deed was in fact a mortgage, and the only proper remedy for the defendant was by a bill in chancery to foreclose it.  She received in dividends from the vessel a sum admitted to be $1,200, after which she sold the interest for $9,000.

The decree of the court below will be reversed, and decree entered in this Court declaring the deed to be a mortgage, and that an accounting be had between the parties to determine the amount due.  Upon this accounting defendant will be charged with the amounts received from the sale of the vessel, with the amounts received from the sale of other personal property, and with the value of that, if any, that she has not sold, but used, and also with the rents and payments received.  She will be allowed the actual amount of money due from her son at the date of the deed, but not for any sum which she afterwards loaned him.  She will also be allowed for taxes and repairs, and for the amounts paid upon a prior mortgage upon the property.  Complainant will be given one year within which to redeem, during which time she will be entitled to the possession of the homestead.  Under the statute, no sale could be had until the expiration of a year after filing the bill.  It is therefore equitable and right that she should have the time to redeem that the statute gives.  If complainant redeems from the decree when entered, she will be entitled to an assignment of the decree to her.  If she fails to redeem, the premises will be sold under the usual notice to be provided for in the decree.

The proofs already taken will stand as part of the record, and either party will be permitted, under the rules and direction of the court, to take such further proofs upon the accounting as they shall deem material. The complainant will recover the costs of both courts.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. LONG, J., did not sit.