SARAH McARTHUR v. GEORGE J. ROBINSON ET AL.

*Mortgage—Deed absolute in form—Parol evidence—Accounting.*

1. It is competent, in a suit to declare a deed absolute in form to be a mortgage, to show by parol testimony that the deed was in fact made as security for a loan; citing *McMillan v. Bissell*, 63 Mich. 69.

2. The proof in such a case should be clear and convincing, and sufficient to overcome the presumption that the instrument in question truly represents the transaction in its entirety; but, in weighing the testimony, the fact that there was a considerable inadequacy of consideration, as well as the fact that the original application was for a loan, are deemed of weight and importance in determining the main question,

3. While it is true that such a deed is in equity a mortgage, a deed is required to revest the title in the grantor.

4. In a suit to declare a deed absolute in form to be a mortgage, with leave to redeem, it appeared that, before the execution of the deed, the grantor had sold on contract a portion of the lands described in the deed, and that the defendant, who secured the making of the deed, had induced the holder of the legal title to the contracted lands, which he held in trust for the vendor, to convey the lands to the vendee, who paid the defendant the amount due on the contract. And it is held that the money thus received was a trust fund; that, when the deed sought to be declared a mortgage was given, this money had taken the place of the contracted land, which was included in said deed; and that it is not inequitable that the defendant should be held to apply this fund towards the extinguishment of the debt secured by said deed.

5. Where, on an appeal in a suit brought to declare a deed absolute in form to be a mortgage, it appears that, while the complainant has established her claim, the record is not sufficiently full to justify the entry of a decree without an accounting as to the amount due the grantee, the case will be remanded for such an accounting.

Appeal from Bay. (Cobb, J.) Argued February 13, 1895. Decided April 2, 1895.

Bill to declare a deed to be a mortgage, and for leave to redeem. Complainant appeals. Decree reversed, and record remanded for an accounting. The facts are stated in the opinion.

*Frank Emerick*, for complainant.

*T. A. E. & J. C. Weadock* and *James E. Duffy*, for defendants Robinson.

MONTGOMERY, J. The bill in this case is filed to have a deed of certain lands in the county of Alpena, executed by David D. Oliver and wife to Alfred E. Hawes, and bearing date the 16th day of June, 1879, declared to be a mortgage, given as security for the repayment of a loan

of $150, with interest, and for leave to redeem.    Complainant has succeeded to the rights of Oliver.

The bill alleges that, in receiving the deed, Alfred E. Hawes acted as the agent and attorney of defendant George J. Robinson, and sets out somewhat in detail the previous relations existing between Oliver and George J. Robinson, which it is unnecessary to set forth at large in this opinion.    It is sufficient to say that, at the time of the execution of this deed, certain litigation was pending in the United States circuit court for the Eastern district of Michigan, in which Oliver was complainant and George J. Robinson was one of the defendants, but in which, by an agreement between the counsel representing each, their interests were identical.    In this suit there were other defendants against whom a decree was sought, and who were seeking a discharge in bankruptcy.    As, by the agreement between the counsel of Robinson and Oliver, Robinson was to share in the avails of any decree which should be obtained, he, as well as Oliver, was interested in preventing the discharge in bankruptcy of his co-defendants.

This being the state of facts, on the 19th of May, 1879, Oliver, who then resided at Detroit, wrote to defendant George J. Robinson, at Alpena, desiring the assistance of Robinson in raising money to contest the application for the discharge in bankruptcy of Cunningham, Haines, and Ranney, defendants in the suit in the federal court.    It appears that Robinson was away from home at the time, but on his return, on the 29th of May, he answered the letter, saying, in effect, that he deemed it of the greatest importance to prevent the discharge of Cunningham, but without suggesting any means of raising money.    Two days later, Robinson wrote to Alfred E. Hawes, who was then his attorney in the litigation in the federal court, as follows:

"Oliver writes me in relation to Cunningham's discharge. I concur with him on the importance of holding Cunningham tied until the suit at Detroit is adjusted. It is certainly most important. He wants me to go to Syracuse, and he wants money. Now, he has certain equitable rights in a large amount of lands in this county and adjoining counties. They have been stripped of timber and eaten up with tax claims; yet, if one had them straightened up in title, he could likely get a few hundred dollars out of them, and if Oliver would quitclaim them to you for $100 or $200, to be used in paying our expenses and fighting Cunningham's discharge, it would be best to do it, rather than let Cunningham get off, and, if you can't raise the money for him, I would do it myself, through friends. I write you a letter so you can show it to him, and you had better drop him a line—postal card—to 419 7th street."

Inclosed was a letter which was intended to be shown to Oliver, and which read as follows:

"May 31, 1879.
"*Friend Hawes:* Mr. Oliver writes me in relation to Cunningham's discharge. It is very important that it be defeated until Oliver takes judgment. Mr. Oliver seems in doubt as to his ability to raise funds to oppose it. You know I have had so much delay and so little returns, or I might be able to stand this much. Some time ago you said you could let me have a little, and I did not then need it. Can't you do it for Mr. O.? I presume he can secure you, as he has an equitable interest in lands, and, although the title is badly mixed with adverse claims and tax titles, yet I have no doubt a little could be realized from them by swapping titles, clearing off clouds,—enough, probably, to pay what he wants, and pay for the actual trouble and expense. I will hand you a list of them, and you can talk the matter over with him.
"Respectfully yours, GEORGE J. ROBINSON."

On the 7th of June, Hawes wrote to Robinson, saying that Oliver did not want to quitclaim his interest in the lands, but would mortgage them; and on the 8th of June Hawes wrote another letter to Robinson, in which he says:

"Oliver was just in. He will take $400 for the first group, $1,500 for the middle group, or $300 for the bot-

tom group, if sold separately, but will not sell them all
for less than $2,500."

To this, defendant Robinson replied, under date of June
12:

"*Friend Hawes:* Yours of the 8th is at hand. I am
not in need of lands or of lawsuits, and don't want to
buy any of Oliver's, as you may well imagine, or to advise
you to do so, but I do want to assist him in opposing
Cunningham's discharge, for the interest of all concerned.
If you can loan Oliver what he wants on such terms as
you may be mutually benefited, I will say to you this: I
will pay you $150 for Mr. and Mrs. Oliver's quitclaim
deed to the following lands: Lots 1, 4, and 5, and the
south-west quarter of the north-east quarter, section 21,
town 31, 8 east; south-east quarter of section 25, 31, 6;
lots 3 and 4, and the north half of the north-east quarter,
section 32, 32, 7; south-east of the north-west and the
north-east of the south-west, section 28; south-west of the
north-east and the south-east quarter and the east half of
the south-west quarter of section 29,—all in town 32 north,
range 7 east. The proposition to take these lands off your
hands to stand for 60 days, and no longer. While this is
a long list of lands, it is doubtful whether the interest
named will bring anything, but, as I am not seeking to
buy, it is unnecessary to discuss this point. If the above
proposition enables you to deal with Oliver, it will ac-
complish all I seek to do, and I take it to be for your
advantage to facilitate his plans. This is as far as I can
possibly go in the matter, and at present I have no funds
at my command; but if you trade, and must have the
money sooner than 60 days, I will try and get around
sooner.
"Respectfully yours, GEORGE J. ROBINSON."

The lists which were referred to in Hawes' letter of June
8 to Robinson appear to have been lost, and it does not
very clearly appear whether the lands mentioned in the
letter of June 12, being the lands in controversy in this
case, are the same as those mentioned in the bottom group
referred to in the letter of Mr. Hawes, although defend-
ants' counsel appear to assume that they were substantially
identical. Oliver, however, testifies that the list contained.

in the letter of June 12 was taken from the three first-mentioned groups, and was not identical with either.

The testimony of Oliver tends to show that after the receipt of this letter of June 12, and on the 16th of June, a conveyance of the lands in question was prepared, upon an agreement that Hawes should loan to him (Oliver) $150, and accept a quitclaim deed as collateral for the loan, and that it was agreed that, when the $150 with interest should be paid, the land was to be re-deeded to Oliver. He also testified that he understood at the time that Hawes represented Robinson in the transaction. His testimony is supported by the testimony of Charles F. Burton, an attorney, who testifies that at about that time he had some conversation with Mr. Robinson, not with especial reference to any particular description of land, but with reference to the business for which he (Robinson) was giving Mr. Oliver money, and for which the deed was given, and that Mr. Robinson proposed to advance to Mr. Oliver money for that purpose, provided he could have some security for the money, and that, in order to give him security for the re-payment of the money, Mr. Oliver made this deed of the land to Mr. Hawes; that Mr. Hawes was acting for Mr. Robinson; and that the deed was given to secure that payment. Mr. Burton accompanied Mr. Oliver to the office of Mr. Hawes, and, as the deed had not been acknowledged by Mrs. Oliver, a receipt was given for an advance of $50, which receipt read as follows:

"Received of A. E. Hawes $50, as part payment of the purchase price of the within-described parcels of land, balance to be $100.

" Detroit, June 16, 1879.

"DAVID D. OLIVER."

George J. Robinson and Hawes both deny the statements of Oliver and Burton, and both testify that the deed was an absolute deed.

104 MICH.—35.

On the 16th of June, Robinson wrote Hawes as follows:

"*Friend Hawes:*    Your telegram is at hand, and draft will be honored.    I presume you fully understand that I am to deal with you for the lands, per agreement, and that, if the amount of draft is not repaid on specified time, you will deed me the lands.    I don't want anything that could be construed into a mortgage, as the property, viewed in all its contingencies and valuations, would not warrant a loan on mortgage and its drawbacks in the way of foreclosure, etc., etc.    I take it the parties do not understand they are dealing with me at all.    I am straining myself a good deal just now, and, except for the pressing necessity of the matter, would be glad to have nothing to do with it."

To this Mr. Hawes replied, by letter of June 18:

"*Friend George:*    Yours of the 16th at hand, and noted. You need not be apprehensive about the future in the Oliver deal.    I made with him an out and out sale and purchase of the lands.    He wanted me to loan him the money at 60 days, and that he would pay for use of it $50 at that time, but this I refused to do.    So, said he, 'I must have the money, and you may have the lands for the $150.'    You are in no way known in the matter, and have nothing to do with it unless you choose to take the lands off my hands at the price agreed upon.

"Yours truly, A. E. HAWES."

It will be seen that there is an irreconcilable conflict in the testimony, but, as bearing upon the question of what the understanding of Oliver was, we think the letter of Robinson of June 12, which was the last one before the time of the execution of the contract, and which was intended to measure Hawes' authority, is very significant. In this letter the proposition was not for Hawes to purchase from Oliver, but Robinson says:

"If you can loan Oliver what he wants on such terms as you may be mutually benefited, I will say to you this: I will pay you $150 for Mr. and Mrs. Oliver's quitclaim deed to the following lands," etc.

The fact should not be lost sight of that, before the suggestion came to Hawes that Robinson did not want a mortgage, the transaction had been substantially closed. A portion of the money had been advanced, and the quit-claim deed prepared, and whatever agreement was made between the parties had been perfected.

As further proof bearing upon the accuracy of the recollection of Hawes and Robinson, Hawes testifies that the deed was intended to convey to him in his own right, and not otherwise, the title to these lands; that the deed was not executed and delivered to him either as an agent, attorney, or trustee of George J. Robinson or any other person; that he conducted the negotiations on his own account for the purchase of these lands for $150 cash; and that he afterwards resold the same to Robinson at a profit to himself. The whole correspondence tends to negative this statement, and the statement is, moreover, in conflict with the sworn statement of George J. Robinson in another proceeding, which will be hereafter referred to. But Robinson also testifies in this proceeding as strongly as does Hawes; his attention being called to the testimony of Hawes, above quoted, and this question being put:

" And he swears here that he afterwards did sell them to you at an advance or profit to himself. Is that the fact?

" A. Well, I think that I allowed him some little commission in the matter. I think I did.

" Q. Did you give him more than $150 for them?

" A. I think I gave him a trifle more than that. I don't remember just.

" Q. Don't you recollect how much?

" A. No; I do not. I may have given him a ten-dollar note.

" Q. That would have been liberal enough?

" A. Yes, sir.

" Q. The money that he paid for them he got from you, didn't he?

" *A.* No.

" *Q.* It was his money?

" *A.* I don't know where he got the money.

" *Q.* It was not your money?

" *A.* It was not my money.

" *Q.* You just bought them of him?

" *A.* Yes, sir.   *   *   *

" *Q.* But, at any rate, it was an out and out sale to him as an individual, as you claim?

" *A.* Yes, sir.

" *Q.* And not as your attorney?

" *A.* Not as my attorney.

" *Q.* Nor agent?

" *A.* Nor agent.

" *Q.* Nor trustee?

" *A.* Nor trustee.

" *Q.* Is it not a fact that he took that deed to himself simply because he was your attorney and agent, and was on the ground, and you absent from the city?

" *A.* No, sir.

" *Q.* It is not so?

" *A.* No, sir."

It appears that in the deed which Hawes subsequently made to Mrs. Robinson, at the request of the defendant George J. Robinson, two descriptions of the land included in the deed from Oliver to Hawes were omitted, and a bill was filed in the circuit court for the county of Alpena, against Hawes, to compel him to convey the omitted descriptions. In that bill George J. Robinson avers (and it is a sworn bill) that he purchased the lands in question of D. D. Oliver;—

" That in said year 1879, and for some time prior thereto, Alfred E. Hawes was the general attorney of this complainant, and had charge of the general and legal business of complainant at the city of Detroit; that at the time of the execution of the deed of said lands, to wit, June 16, 1879, the complainant was absent from the city of Detroit, where said deed was executed, and that said deed was executed by the said David D. Oliver to the said Alfred E. Hawes as the attorney and agent of complainant, and solely for that reason, he (said Hawes) having no interest whatever in said lands and purchase, and that said conveyance was

made to him (said Hawes) solely as the agent and attorney of complainant, and to be subsequently, on demand, deeded to this complainant."

If this sworn bill of Robinson's states the truth, it is charitable to assume that the recollection of Hawes and Robinson has since grown somewhat dim; and, if their recollection is in fault in this important particular, it is not impossible that it may be in fault in other respects.

The record shows that Oliver made other loans of defendant Robinson, and gave security on other lands, and some time after this transaction he wrote Robinson as follows:

"What will you take to deed me the lands that I deeded to Mr. Hawes, and what interest you have in town 29 north, of range 8 east, and I give a mortgage on the land reconveyed, and a mortgage on section 12, town 29 north, R. 8 E., for the payment of $1,000 a year for two years, and balance when suit is decided by Supreme Court?"

The defendants strenuously insist that this note is inconsistent with the claim which Oliver now makes,—that the deed to Hawes was simply made as security. We think, however, it is subject to explanation, and Oliver testifies that he would not know how else to express the transaction. While it is true that the instrument was a mortgage in equity, it was a deed in form, and it would require a deed to revest the title in Oliver. The latter did not ask of Robinson what he would take to sell the lands to him (Oliver), but what he would take to deed the lands. As this was the form of conveyance which would be requisite, it might mean no more than the word "release" would have meant if the transaction had been evidenced by a mortgage in the usual form.

We think, on the whole record, that the complainant has sustained her case by a preponderance of the testimony. It is settled that it is competent to show by parol that a deed absolute in form was in fact made as security

for a loan. *McMillan v. Bissell*, 63 Mich. 69, 70. It is true that in this class of cases the proof ought to be clear and convincing, and sufficient to overcome the presumption that the instrument in question truly represents the transaction in its entirety; but, in weighing the testimony in such cases, the fact that there was a considerable inadequacy of consideration, which fact appears in this case, as well as the fact that the original application was for a loan, which appears beyond question to have been the fact here, are deemed of weight and importance in determining the main question. See Jones, Mortg. §§ 266, 329.

We are asked to determine that the full amount of the loan has been repaid. It appears that a portion of the lands involved in this suit had been contracted by Oliver to one Brackinreed in 1866, and that there remained due upon the contract $480. Subsequently the legal title was vested in one Cunningham, but it was held in trust for Oliver. Robinson, being cognizant of this, went to Cunningham with a deed running to Brackinreed. Cunningham executed the deed, and Robinson collected the money. This occurred in 1874, and before the loan made through Hawes to Oliver, and for which the conveyance here involved is a security. This conveyance was made by Cunningham with the expectation of holding the money in trust for Oliver, instead of the land. But Robinson, upon collecting the money from Brackinreed, kept it, and never paid it over to Cunningham, but testifies that he applied it on an indebtedness of Cunningham to him. There can be no doubt that this was a trust fund, and that Robinson knew that it was a trust fund, and that at the time of the giving of this security it had taken the place of the land, which was included in the deed as a portion of the very security which Oliver executed for the advance of $150. It certainly is not inequitable that Robinson should be held to apply the fund which represented the land, and

which, without the knowledge of Oliver, had found its way into his hands, towards the extinguishment of this liability.

But we think the record is not sufficiently full to justify the entry of a decree without an accounting. The case will be remanded, and an accounting had. The defendants will be charged with the amount received from Brackinreed, the amount received on a sale of the S. W. ¼ of the N. E. ¼ of section 29, township 32 N., range 7 E., and with interest on these sums, and will be credited with the $150 secured by the deed, and with whatever sums they have paid for taxes upon the lands in question, with interest. If there shall remain a balance due the defendants, the complainant will be required to make payment of the same, as a condition to redemption, within 60 days from the date of the final decree. The reference for accounting should be made to a circuit court commissioner of the county of Alpena.

As, in the view we take of this case, the defense is wholly unconscionable, the complainant will recover costs of both courts.

LONG, GRANT, and HOOKER, JJ., concurred. MCGRATH, C. J., did not sit.