WALL *v.* ALBION COLLEGE.

DEED ABSOLUTE—MORTGAGE—IMPLIED PROMISE TO PAY.
　　Where a man conveyed land to his sister for a certain price, with the understanding that, when the money paid by her should be realized from the profits of the land, it should be reconveyed, and the whole transaction indicates that security was intended, equity will imply a promise on his part to repay within a reasonable time, and the deed will therefore be decreed to be a mortgage. GRANT, J., dissenting.

Appeal from Eaton; Wiest, J., presiding. Submitted January 10, 1902. (Docket No. 58.) Decided May 19, 1902.

Bill by John Wall against Albion College and others to have a deed declared a mortgage, and to be allowed to redeem. From a decree for complainant, defendant college appeals. Affirmed.

*Garry C. Fox* and *Powers & Stine*, for complainant.

*Loud & Stewart*, for appellant.

MONTGOMERY, J. John Wall, the complainant, on March 3, 1892, owned in fee simple the south 50 acres of the E. ½ of the S. E. ¼ of section 25 in Eaton township, Eaton county, Mich. He was a married man, but he and his wife had separated, and at such time did not live together. The premises were worth $2,000. A mortgage had been foreclosed, and at such date the equity of redemption was about to expire. The amount required to redeem aggregated $950. The wife refused to execute either a deed or a mortgage, and the complainant was compelled to pay her $500 for so doing. The complainant negotiated a sale of the entire premises to one Joel P. Britten for $2,000; but subsequently a different arrange-

ment was effected, whereby Britten took the south 25 acres, and Ruth F. Wall, a maiden sister of complainant, took the north 25 acres. The deed to Britten was executed by complainant and wife March 3, 1892; Britten paying $1,000 for such south 25 acres. The deed to Ruth F. Wall of the north 25 acres was executed at the same time, John and his wife joining in the execution of such deed. The complainant paid his wife the $500 he had agreed to pay her.

- The contract entered into between complainant and his sister was oral, and substantially as follows: Ruth was to furnish John with $450,—the amount lacking to redeem from the mortgage;—and John was to give her a deed of the 25 acres, and Ruth was to have possession and all of the rents and avails thereof. She was to pay the taxes and meet the necessary expenses, and when the land paid her back, or when she got her money back out of it, she was to redeed to John. Ruth, not having the money, made arrangements to, and did, borrow the $450 from one Frank Rose. She immediately assumed possession, and from that time until her death, which occurred April 21, 1899, she had and received all the avails of said 25 acres; and complainant claims that she received therefrom the amount loaned, together with the interest and expenses, before her death, and was equitably bound to reconvey the 25 acres back to him. Ruth Wall died without having redeeded the property, and this bill is filed for the purpose of having this deed declared a mortgage, and redeeming from the same. The circuit judge made a decree in favor of the complainant, and the defendant the Albion College appeals.

The evidence is overwhelming and convincing that it was intended that complainant retain an interest in this land, and it is manifestly inequitable that he should be deprived of it. But it is contended by defendants that certain testimony given by complainant in a certain probate proceeding shows that this was not technically a mortgage, for the reason that there was no agreement on his

part to repay the money, and no debt created. It is true that complainant testified in the probate proceeding:

"I do not claim that there was any obligation on me to pay her any of this $450. The deed paid her, and she got her pay, and when she got her pay she would deed it back to me."

An argument may be built up from this, it is true, that there was no understanding that there was any obligation upon the part of complainant to repay this money. It is altogether likely that neither party expected that he would be under the necessity of doing so, as it was evidently expected that the money should be realized from the land itself. But, in our view of the case, the whole transaction indicates that security was intended, and that it was complainant's obligation which was being paid from the proceeds of the land, and that equity, at least, would raise a promise on his part to repay within a reasonable time. We also think the testimony supports the finding that the deceased was repaid her advances, interest, and taxes. We think the case falls within *Sowles* v. *Wilcox*, 127 Mich. 166 (86 N. W. 689), and that the decree should be affirmed, with costs of this court to complainant.

HOOKER, C. J., and MOORE, J., concurred with MONTGOMERY, J.

GRANT, J. (*dissenting*). The complainant, on March 3, 1892, owned 50 acres of land. He was married, but he and his wife had separated. The land was mortgaged for $950. His wife refused to execute a deed or mortgage, except upon payment to her of $500. Complainant carried on negotiation with one Britten for a sale of the land for a consideration of $2,000. This fell through. He subsequently sold 25 acres to Britten for $1,000. He deeded the other 25 to his sister, Ruth, by warranty deed, in which the consideration was stated at $625. The actual consideration is claimed to be $450. Ruth died testate April 21, 1899. By her will, after disposing of her personal

estate, she directed her executors to pay annually to the complainant and his brother, Charles, or to the survivor of them, the rents and avails of this land and of the balance of her farm, 60 acres, and after the death of both she devised said land to the defendant Albion College.

Complainant filed this bill to set aside the deed made by him to Ruth, on the ground that it was a mortgage, and that said mortgage has been paid out of profits from the land.    Complainant's counsel state their claim as follows:

"A parol contract was entered into between complainant and his sister substantially as follows: Ruth was to furnish John with $450,—the amount lacking to redeem from the mortgage,—and John was to give her a deed of the 25 acres, and Ruth was to have possession and all of the rents and avails thereof.    She was to pay the taxes and meet the necessary expenses, and when the land paid her back, or when she got her money back out of it, she was to redeed to John."

The learned circuit judge held that the deed was a mortgage, and that Ruth had received enough from the rents and profits to pay the amount, interest, and taxes.    He so found from statements made by her to third parties at various times before her death.    He entered a decree for the complainant.

The parol statements on which the decree is based are not very satisfactory.    The finding convicts Ruth of a deliberate violation of her agreement.    For seven years she occupied, managed, and finally disposed of this property as her own.    Death has sealed her lips, and the evidence must be very convincing before converting a warranty deed into some other instrument.    If the transaction between the two made the deed a mortgage, we might possibly be compelled to reach the same conclusion as did the circuit judge.    But in my opinion, granting the transaction to be as claimed, it was not a mortgage, but a contract to reconvey.    There was no debt to be secured. Complainant owed nothing, and did not bind himself to pay anything.    A debt is essential to the existence of a

130 MICH.—34.

mortgage. 1 Jones, Mortg. § 265; *Blumberg* v. *Beekman*, 121 Mich. 647 (80 N. W. 710); *McMillan* v. *Bissell*, 63 Mich. 66 (29 N. W. 737). John Wall contested his sister's will. Upon the trial in that case he testified:

"I do not claim that deed was intended to be a mortgage. I do not claim that there was any obligation on me to pay her any of this $450, or that, if there is a balance due on it, that I am obliged to pay it. The deed paid her, and she got her pay, and when she got her pay she would deed it back to me."

In 1897 complainant filed a bill of divorce against his wife, in which he alleged that on February 15, 1892, he requested his wife to go and live with him; that she refused; that at that time he was the owner of 50 acres of land; that he had subsequently sold it for $1,500, out of which he paid the mortgage of $950, and gave her the remaining $500 in cash. In answer to a cross-bill filed by her, he again stated that he had no property, except some horses, buggy, and harness. Under this record, I find that the agreement, if one was made, was an agreement to reconvey, and, not being in writing, is void, under the statute of frauds.

The decree should be reversed, and bill dismissed, with costs of both courts.

LONG, J., did not sit.