# JANUARY TERM, 1910.*

SCHMIDT *v.* BARCLAY.

1. MORTGAGES—EQUITY—FORECLOSURE OF DEED AS MORTGAGE.
    While the burden of proof is on one who seeks to show that a conveyance absolute in form is in fact a mortgage, a preponderance of the evidence is sufficient, and complainant is not required to satisfy the court beyond a reasonable doubt.

2. SAME—EVIDENCE—WEIGHT.
    The adequacy of price is a consideration of great weight in determining the character of such an instrument.

3. SAME—CONVEYANCES—DEEDS AS MORTGAGES.
    Upon a review of the evidence it is *held*, as a matter of fact, that a deed of real property worth upwards of $75,000, incumbered by a mortgage of $28,000, for a consideration of $16,516.92 was given as a mortgage.

Appeal from Wayne; Murphy, J. Submitted January 14, 1910. (Docket No. 79.) Decided April 1, 1910.

Bill by Ida W. Schmidt against William L. Barclay to have a deed absolute in form declared to be a mortgage. From a decree for complainant, defendant appeals. Affirmed.

*James G. McHenry* (*A. B. Hall* and *John T. Nichols*, of counsel), for complainant.

*Edward E. Kane* and *Allan H. Frazer* (*William L. Carpenter*, of counsel), for defendant.

MOORE, J. The trial judge filed a written opinion in this case, from which we quote as follows:

---

* Continued from Vol. 160.

" The complainant herein seeks relief appropriate to the theory that a deed, absolute in form, executed and delivered by her to the defendant upon July 15, 1905, was mutually intended to be, and in legal effect is, a mortgage. She filed her bill of complaint April 24, 1908. Amended bills were subsequently filed as of the respective dates May 23, 1908, February 11, 1909, and March 16, 1909, the last-mentioned one, the only one signed by the complainant herself, being filed during the progress of the hearing. The cause is at issue upon the answer filed to the original bill, counsel for the defendant having stated during the hearing that in their view no necessity for any other or further answer had arisen by reason of the filing of the amended bill, and that the answer first filed might be regarded as interposed to the bill as finally amended.

" The facts established by the proofs I find to be as follows: Prior to the delivery of the deed, each of the parties hereto owned an undivided half of the northerly half of lot number 38, in section 8, of the Governor and Judges' plan of the city of Detroit. This property is situated upon the west side of Woodward avenue, between State street and Grand River avenue, in the heart of the choicest retail section of the city. This northerly half has a frontage of 30 feet on Woodward avenue. The southerly half of the lot is owned by a third party. Upon the entire 60 feet there stands a modern business structure erected in 1890 at a cost of $49,000.

" The complainant acquired her interest in the property through the death of her father, who died intestate in 1897. His ownership was acquired in 1889. After his death, his heirs seem to have made an amicable division of his estate. In the allotment this property was assigned complainant at a valuation of $45,000, this sum, though an undervaluation, being agreed upon as equitable because of a corresponding undervaluation placed upon certain realty assigned the widow, who was the stepmother of complainant.

" From 1872 until the time of his death, complainant's father, Traugott Schmidt, and the defendant, had been acquainted. As the years progressed, the former placed great reliance in Barclay. The latter gave his time chiefly to the conduct of a carpet and furniture business. For at least eight years this business was carried on by a corporation, Detroit Carpet & Furniture Company, of which Mr. Schmidt was president and Mr. Barclay vice

president, though Mr. Schmidt's active attention was given to other interests. The intimacy increased after Schmidt purchased the parcel in 1889. He bought from defendant's sisters. Very soon thereafter the construction of the building referred to was begun; Barclay having sole supervision of the work.

" When completed, the entire charge of the Schmidt interest, as well as his own, was intrusted to Barclay. He collected the rents, decided upon and superintended repairs, and was, indeed, given sole management. Mr. Schmidt's confidence in Barclay was shared by other members of the Schmidt family. When Mr. Schmidt died, though the complainant had not theretofore been personally acquainted with Barclay, she unhesitatingly continued to permit the management, after she had acquired ownership, to be exercised solely and unquestionably by the latter. This situation continued without interruption to the day of the execution of the deed in controversy.

" For many years complainant had been an invalid, unable to walk, and requiring the constant attendance of a maid. Upon the hearing, seated in an invalid chair, she spoke with manifest physical effort. While of a certain alertness of mind, she is, as her business dealings show, and as, perhaps, is not unnatural in one who has long labored under great and constant physical distress, lacking in that business capacity which sees danger and guards against it. Her share of her father's estate had in July, 1905, been largely dissipated, either in speculation or profitless business projects, some of which latter were always regarded as chimerical by others. Upon the realty in question there was in July, 1905, a mortgage of $28,-000. She was then being pressed and harassed by creditors, and judgments had been taken against her. She had in hand a business venture, in which she had great faith, but which needed finances. The only productive portion of her heritage, and practically the only remaining piece, was this property.

" She had implicit faith in the defendant. He, in turn, knew her true condition financially. He knew the other difficulties under which she labored, including an estrangement from the members of her family. The one source whence she expected disinterested guidance was from this defendant. In her dilemma she turned to him. He had always advised her against parting with the property in dispute. If retained, it would insure her ample support

during all her days. And so she sought him with a project for raising further money.

"If there is any one thing conclusively established by this record, it is that at the time of the giving of the deed this property at its very lowest value was worth $75,000. I think it correct to say that the bare land was worth that sum, and that a true valuation must include in addition thereto, one-quarter of the then worth of the building, which may conservatively be put at $12,500. * * * In her extremity, complainant asked the defendant for funds, agreeing that the property should be held by him to secure repayment. * * * The entire arrangement was concluded solely by complainant and defendant. It resulted in the adoption of a plan by which he was to take a deed of her interest, coupled with an agreement to reconvey, to be contained in a separate instrument. In figuring up her financial needs she estimated that the difference between the figure at which she accepted the property, $45,000, and the incumbrance upon it, including accrued interest, would be sufficient for her purposes. This gave her $16,516.92. She was to have the right to redeem after three years. * * *

"Fortunately complainant is not without very satisfying corroboration of her version of these interviews. This is furnished by the witness Grace Brown Tyree, who was maid to complainant at the time and until November, 1905. This witness was intelligent, frank, and honest. * * *

"The gross inadequacy of the consideration, the distress of the complainant, the improbability that she would part with the one thing in the world to which she could assuredly look for support—these are circumstances strongly supporting the facts which are established by the words of living witnesses.

"Much stress is laid upon the discrepancies between the original bill and the several amended bills. This is a situation deserving careful attention. Nor has it been overlooked. However, it finds explanation in the complainant's condition of health and in a dissatisfaction with foreign counsel, who, at the outset, had charge of this litigation. It is significant, too, that at one time the complainant manifested distrust of counsel proffered by her brother, though later this was removed, for to this solicitor was confided the laboring oar upon the hearing. The one bill herein signed by herself is drawn in conformity

with the proofs adduced. What led to the signing of the other bills by counsel is not disclosed, save as the facts just recited may be a disclosure.

"These conclusions are reached with due regard for the high character given by the law to an instrument executed with the formality requisite to a deed absolute, and one so complete and unambiguous upon its face. The true course in controversies such as this was indicated by Judge GRAVES, in an analogous situation:

"'Each case,' he said, 'must be decided in view of the peculiar circumstances which belong to it and mark its character, and * * * the only safe criterion is the intention of the parties, to be ascertained by considering their situation and the surrounding facts, as well as the written memorials of the transaction.' *Cornell* v. *Hall*, 22 Mich. 382.

"* * * As to the character of the proof required to be adduced by complainant in sustaining the *onus* of her case, I think, upon the authority of the following cases, that a preponderance of the proof is sufficient, and that the complainant has amply met this duty. *Sanborn* v. *Sanborn*, 104 Mich. 184 (62 N. W. 371); *Kellogg* v. *Northrup*, 115 Mich. 328 (73 N. W. 230); *Cady* v. *Burgess*, 144 Mich. 531 (108 N. W. 414).

"While the defendant would not be permitted to profit by his fraud in withholding the collateral agreement, a parol agreement to reconvey upon repayment is of itself sufficient to constitute the deed a mortgage. *Wall* v. *Albion College*, 130 Mich. 528 (90 N. W. 321).

"The bill was prematurely filed, as the right to redeem did not accrue until July 15, 1908, whereas suit was begun April 24, 1908. This objection would have been good upon demurrer. This objection appears upon the face of the bill. No benefit of demurrer is claimed in the answer. * * *

"I think the issue raised by the answer herein and the taking of proofs upon it preclude the defendant from asserting this objection at a time long subsequent to the day when complainant's right of action accrued. To turn the complainant from the court at this time and subject her, the defendant, and the court itself, to a repetition of the pleadings and a reiteration of the proofs, does not commend itself to one's sense of right. Nor is it required by right practice. *Sarter* v. *Gordon*, 2 Hill Ch. (S. C.), 137; *Lowry* v. *Lawrence*, 1 Caines (N. Y.), 69; *Bemis* v.

*Faxon*, 4 Mass. 263; *Cheetham* v. *Lewis*, 3 Johns. (N. Y.) 42; *Waring* v. *Yates*, 10 Johns. (N. Y.) 119.

"No agreement appears to have been made as to the interest to be paid by complainant upon the money advanced her. An agreement to pay interest is, however, implied by the law, and this will be fixed at the legal rate. Justices SHERWOOD and CHAMPLIN, in *McMillan* v. *Bissell*, 63 Mich. 71 (29 N. W. 737).

"A decree may be entered conformable to this opinion and to the prayer of the bill."

Such a decree was entered, and the case is brought here by appeal. In the omitted portions of the opinion the trial judge analyzed and characterized the testimony from his point of view. The printed record contains more than 400 pages. There are seven carefully prepared briefs, and the case was argued orally at length by very able solicitors. The legal questions involved are not complicated, as like questions have been repeatedly before, and decided by, this court.

The solicitors for the defendant contend as follows in their brief:

"The burden of proof in Michigan, as elsewhere, where it is sought to show a conveyance absolute in form was intended as a mortgage, is upon him who asserts the defeasible character of the instrument. *Kellogg* v. *Northrup*, 115 Mich. 327 (73 N. W. 230).

"The rule in the State of Michigan is stated by Judge GRAVES as follows:

"'The natural and *prima facie* effect of a conveyance expressing no condition and regularly executed in the presence of attesting witnesses, and duly acknowledged as an absolute deed, ought not to be controlled and qualified by oral evidence, and brought down to the effect due to a mere security on a slight showing. The great current of authority is distinct in holding that the party thus seeking to modify the operation of the instrument and prove himself entitled against the terms of his own deed to an equity of redemption is not only bound to make out that the transaction was in truth and justice nothing more than the giving of security, but is required to do so by a force of evidence sufficient to command the unhesitating assent of every reasonable mind.' *Tilden* v. *Streeter*, 45 Mich. 533, 540 (8 N. W. 502).

"This language of Judge GRAVES is approved *in toto* in *Etheridge* v. *Wisner*, 86 Mich. 166 (48 N. W. 1087). The rule in *Tilden* v. *Streeter*, *supra*, is just another way of saying that the evidence required must satisfy the court beyond a reasonable doubt, and confirms a previous opinion of the Michigan Supreme Court, wherein it was said:

"'It would, we think, be exceedingly dangerous, and tend to weaken confidence in titles generally, if the effect of deeds of conveyance, leases, or other written evidences of title could be thus changed by a verbal agreement, except in very clear cases where the contract is proved to the entire satisfaction of the court. It should never be done upon a slight preponderance of evidence. The court should be satisfied beyond a reasonable doubt.' *Case* v. *Peters*, 20 Mich. 303.

"'To divest title on parol evidence alone, the preponderance of evidence should be clear, and the evidence should be so convincing as to leave no reasonable doubt upon the mind.' *Hunter* v. *Hopkins*, 12 Mich. 228.

"Judge CAMPBELL, in *Reynolds* v. *Campbell*, 45 Mich. 531 (8 N. W. 581), where a bill was filed to correct a deed so as to make the conveyance subject to mortgages, and excepting a crop of wheat from its operation, says:

"'But it is enough to say that without a very convincing preponderance of evidence in favor of complainant no relief can be granted.'

"Judge GRAVES, in concurring with Judge CAMPBELL in the same case, quoted the opinion in *Case* v. *Peters*, *supra*, including the rule:

"'The court should be satisfied beyond a reasonable doubt.'"

It is undoubtedly the law that the burden of proof is upon the one who seeks to show that a conveyance absolute in form is in fact a mortgage. *Kellogg* v. *Northrup*, 115 Mich. 327 (73 N. W. 230). But we do not understand it to be the rule that this must be shown beyond a reasonable doubt, as contended by counsel.

It has been said:

"There is no fixed or definite standard by which the court can determine the sufficiency of evidence that will justify the declaring an instrument on its face a deed to

be a mortgage; it being impossible to lay down any decisive tests and fixed rules by which it can be ascertained with mathematical accuracy whether in any particular case clear and convincing proof has been adduced that an instrument *prima facie* a sale was in reality a mortgage. But every case must of necessity depend upon the circumstances peculiar to itself." 20 Am. & Eng. Enc. Law (2d Ed.), p. 954, and note 2.

In *Ferris* v. *McQueen*, 94 Mich. 367 (54 N. W. 164), where a question of fraud was involved, Justice LONG, speaking for the court, said:

"In speaking of the other claims of fraud made by counsel for defendant, the court stated to the jury:

"'Fraud must be proved, and must not be inferred from slight circumstances. Fraud may be proved, however, by circumstantial evidence as well as positive proof. Where fraud is charged, express proof is not required. It may be inferred from strong presumptive circumstances. Fraud will not be presumed upon slight circumstances or mere suspicion, but the circumstances must be such as to amount to clear proof before a party can be held liable for fraud, and it must be consistent with the acts of fraud charged, and inconsistent with honesty and good faith.'

"It is claimed that this was error; that it was misleading to the jury; that the court was in error in stating that 'fraud must be proved, and must not be inferred from slight circumstances;' and again, in saying that 'it may be inferred from strong presumptive circumstances.' In *O'Donnell* v. *Segar*, 25 Mich. 378, it appears that the jury were told by the trial court that 'they could not infer fraud, and that it could not rest upon implication.' It was said by this court:

"'We know of no such rule of evidence in reference to the question of fraud. It is, like any other fact, to be proved by any facts and circumstances which satisfy the mind of its existence, and may be, and generally is (when found), inferred from circumstances, and cannot often be proved in any other way.'

"The court in the present case, however, told the jury that fraud could 'be proved by circumstantial evidence as well as positive proof;' and yet a limitation was placed upon this by adding that these facts and circumstances must not be slight, and the inference could only be drawn from strong presumptive circumstances, which must

amount to clear proof. The rule is that fraud may be proved, like any other fact, by facts and circumstances which satisfy the mind of its existence, and it is a question for the jury when there is any evidence to warrant the finding. As was held in *Freedman* v. *Campfield*, 92 Mich. 118 (52 N. W. 630), when there is a scintilla of evidence, the verdict will not be disturbed. We think the court was not justified in the use of this language, and that the rule laid down is not upheld by the cases. In *Watkins* v. *Wallace*, 19 Mich. 77, Mr. Justice CAMPBELL, speaking of the charge in that case, says:

" ' We think, however, that in charging the jury concerning the proof of fraud, the language used had a tendency to mislead the jury into a belief that more stringent proof was necessary than the law requires.'

" The judge charged them that 'fraud will not be presumed from slight circumstances. The proof must be clear and conclusive.' This was held error, and the case reversed. It is a little difficult to see any distinction between such a charge and the one given here. The court did not say that the proof must be conclusive, but did say that it must be clear, and, in effect, that it could not be inferred except from strong presumptive circumstances. As in *Watkins* v. *Wallace, supra,* it may be said that:

" ' It might have misled the jury as to the amount and quality of proof required. No such rigid rule prevails in any civil case. Common sense teaches every one to be cautious in arriving at conclusions which are prejudicial to character and honesty; but, if the testimony produces a rational belief, a civil jury cannot be required to discard it because it is not conclusively established.'

" We think the court was in error in this part of the charge."

In *Kellogg* v. *Northrup*, 115 Mich. 327 (73 N. W. 230), where the question involved was whether a conveyance absolute in form was a mortgage, Justice GRANT, speaking for the court, said:

" The *onus probandi* is upon him who asserts that a written instrument is not what it imports upon its face to be. A deed may be shown to be a mortgage. *McMillan* v. *Bissell*, 63 Mich. 66 (29 N. W. 737). While the court in that case were equally divided as to the effect of the proofs, all the justices agreed that a deed absolute upon its

face may be shown to be defeasible by parol upon adequate proof. Justice SHERWOOD recognized the rule that in such case the proofs must be clear and convincing, and said:

"'Something more than a bare preponderance of proof should be required to change the character of the instrument expressed upon its face.'

"Chief Justice CAMPBELL stated that that was one of the very few cases where an attempt was made on the part of the grantee to declare the deed defeasible, and said:

"'It ought not to be done without entirely satisfactory proof.'

"Undoubtedly, either a grantor or a grantee may establish the defeasible character of the instrument. Such suits usually arise in courts of equity, either on the part of the grantor to redeem, or upon the part of the grantee to declare the deed a mortgage, and to foreclose. In either case the *onus* is upon him who seeks to change its character. * * * A preponderance of evidence is sufficient. *Ferris* v. *McQueen*, 94 Mich. 367 (54 N. W. 164)."

In *Sanborn* v. *Sanborn*, 104 Mich. 180 (62 N. W. 371), the bill was filed to set aside a deed on the ground of fraud and duress, or, if not set aside, to have it decreed to be a mortgage, and for an accounting. It was said:

"We think it established by a fair preponderance of the evidence that this deed was given as security. * * * It follows that the deed was in fact a mortgage, and the only proper remedy for the defendant was by a bill in chancery to foreclose it."

An accounting was ordered. See *Cady* v. *Burgess*, 144 Mich. 523 (108 N. W. 414); *Sowles* v. *Wilcox*, 127 Mich. 166 (86 N. W. 689); *Wall* v. *Albion College*, 130 Mich. 526 (90 N. W. 321); *McNaughton* v. *Smith*, 136 Mich. 368 (99 N. W. 382).

A consideration which should have great weight in characterizing the transaction is whether the price was adequate. In a case where the question was whether a conveyance absolute in form was a mortgage the court said:

"In such cases the pecuniary embarrassment of the

grantor, his indebtedness to the grantee, and inadequacy of consideration are circumstances the court looks to in determining the true character of the instrument. They were all set forth in the bill. And of the three inadequacy of consideration is the most important. For without that, why declare a deed a mortgage? No good would come of it, and there would be nothing to warrant the inference of undue advantage always relied on by the court and made the basis of its action in this class of cases." *Emerson* v. *Atwater*, 12 Mich. 314.

See *Reilly* v. *Brown*, 87 Mich. 163 (49 N. W. 557).

In *McArthur* v. *Robinson*, 104 Mich. 540 (62 N. W. 713), the court said:

"We think, on the whole record, that the complainant has sustained her case by a preponderance of the testimony. It is settled that it is competent to show by parol that a deed absolute in form was in fact made as security for a loan. *McMillan* v. *Bissell*, 63 Mich. 69, 70 (29 N. W. 737). It is true that in this class of cases the proof ought to be clear and convincing, and sufficient to overcome the presumption that the instrument in question truly represents the transaction in its entirety; but in weighing the testimony in such cases the fact that there was a considerable inadequacy of consideration, which fact appears in this case, as well as the fact that the original application was for a loan, which appears beyond a question to have been the fact here, are deemed of weight and importance in determining the main question. See 1 Jones on Mortgages (6th Ed.), §§ 266, 329."

In *Reed* v. *Reed*, 75 Me. 264, in deciding a case involving the same question as the one before us, the court said:

"In examining a transaction of the kind now before us the embarrassed circumstances of the grantor are material. And the inadequacy of the sum advanced, compared with a fair cash value of the premises conveyed, is of great moment; for property holders are not obliged to sell their property for a sum much less than its fair value, since they can readily realize its real value in the open market. And it is much more reasonable that they should give security on it than sell it for much less than what they can thus realize. *Rich* v. *Doane*, 35 Vt. 125.

"'When no fraud is practiced,' said Mr. Justice Curtis, in *Russell*

v. *Southard*, 12 How. (U. S.) 148, 'and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and therefore, in the cases on this subject, great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold.'

" See, also, the cases cited by him.  So the general current of authorities holds that courts incline against conditional sales, as they do against forfeitures; and when, upon all the circumstances, the mind is uncertain whether a security or a sale was intended, the courts, guided by prudential reasons, will treat it as the former.  1 Jones on Mortgages (6th Ed.), § 279, and cases cited in note 8; *Conway* v. *Alexander*, 7 Cranch (U. S.), 218.

"' Courts of equity,' said Poland, C. J., in *Rich* v. *Doane*, 35 Vt. 125, 128, 'have followed the rule of regarding the mortgagor as the weaker party, dealing at a disadvantage and needing protection, so that such cases have been watched with jealousy; and, if enough is proved to render it fairly doubtful whether the conveyance was a mere security for a debt, or an absolute conveyance with right of repurchase, the premises have been held redeemable.'

" Under such circumstances, such a decision ' is more likely to subserve the ends of abstract justice and avert injurious consequences.' 1 Jones on Mortgages (6th Ed.), § 279, and cases in note 2."

See *Cobb* v. *Day*, 106 Mo. 278 (17 S. W. 323); *Wilson* v. *Patrick*, 34 Iowa, 362; *Gossum* v. *Gossum* (Ky.), 15 S. W. 1057.

Great stress is put by solicitors for defendant upon the differences which appear between the original bill of complaint and the amended bills of complaint.  They also argue with much detail the alleged inconsistencies in the testimony of the complainant and her maid, while the solicitors for the complainant criticize severely the testimony and conduct of defendant.  The record, though long, has had our careful attention.  It would profit no one to go into detail as to what it shows in relation to the pivotal question in the case, which was one of fact.  As to this question, there is a direct conflict between the complainant and defendant.  The circuit judge possessed the great

advantage of seeing and hearing the witnesses. He, also, without doubt, knew the property involved, as it is in the heart of the best retail district of the largest city of the Commonwealth. He regarded it as conclusively established that the property conveyed was, at its lowest value, worth $75,000. This conclusion is warranted by the testimony of many of the most competent real estate dealers in Detroit. There was a $28,000 mortgage upon the property. The complainant was paid $16,516.92, while the record clearly shows that her interest in the property was worth at least $46,000. The property was among the most valuable real estate in Detroit, located where it was constantly increasing in value. It is unbelievable that one would sell an interest in real estate worth $46,000 for $16,516.92. We think the conclusion is very clear that the parties did not contemplate an absolute sale.

The decree is affirmed, with costs.

HOOKER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.