CHARLES E. WISWALL ET AL. v. FREDERICK S. AYRES, EBENEZER WISWALL, CHARLES G. LEARNED, JAMES S. AYRES, EBENEZER R. AYRES ET AL.

*Consideration of mortgage—Refusal to put business books in evidence— Family dealings.*

It is the presumption of fact that the sum mentioned in a mortgage as the consideration therefor, is correctly stated ; and very convincing proof is required to rebut this presumption.

The refusal of a defendant in foreclosure to produce business books which are in his possession and which may reasonably be expected to shed light upon the transactions in dispute, is suspicious.

The defendant in a suit to foreclose a mortgage has the burden of proving that the consideration therefor, was less than appears therein if complainant claims that amount, and it is against him if his own theory of computation is as favorable to complainant as to himself.

Where dealings between partners who are connected by family ties have been carried on for a long series of years without keeping any strict account of them, but in the confidence which springs from such relations, and litigation thereon arises between them and their successors, a court will be disposed to be governed by such indications as appear in the written evidence of their transactions rather than by the recollections of the parties.

Appeal from Huron. (Stevens, J.) June 21–22.—Oct. 3.

FORECLOSURE bill. Defendants appeal. Affirmed.

*Richard Winsor* and *William T. Mitchell* for complain-

ants. Presumptions are against documentary evidence when it is withheld: *Page v. Stephens* 23 Mich. 363; Wills on Circum. Ev. 91; Stark. Ev. 437; *Life & Fire Ins. Co. v. Mech. F. Ins. Co.* 7 Wend. 34; *Jackson v. M' Vey* 18 Johns. 332; *Clifton v. United States* 4 How. 242; between the parties to a mortgage and their representatives the mortgage is prima facie evidence of the consideration: *Webb v. Eaman* 3 Mich. 139; Hermann on Estoppel 266.

*John Atkinson, G. V. N. Lothrop,* and *Isaac Marston* for defendants. The recital in a mortgage of the amount of consideration may be contradicted or explained: Whart. Ev. §§ 1042-4; Jones Mortg. 384; *Bowker v. Johnson* 17 Mich. 42; *Robinson v. Cromelein* 15 Mich. 316; *Colman v. Post* 10 Mich. 422; *Kimball v. Myers* 21 Mich. 276.

GRAVES, C. J. In April, 1879, the complainants filed this bill to foreclose a mortgage bearing date January 27, 1869, and executed by the defendants Frederick S. Ayres, Charles G. Learned and Ebenezer Wiswall, to Catharine A. Wiswall, wife of said Ebenezer Wiswall, and by her assigned to complainants the 25th of February, 1874. By the terms of the mortgage the consideration and sum secured was $40,105.43, stated to be payable in two years with semi-annual interest at seven per cent. The bill specified a series of payments which were admitted by complainants, and claimed that the sum of $40,000, or about that amount, then remained due and unpaid.

The defendants seriously contesting are Frederick S. Ayres, James S. Ayres, and Ebenezer R. Ayres. The two former, in answering, alleged that the consideration of the mortgage was $21,000 only, and that more had been paid than the bill admitted, and that not to exceed $20,288 remained unpaid, including interest and costs. The defendant Ebenezer R. averred that in case the mortgage had any consideration, which he denied, it had been fully paid. The defendant Learned admitted the case stated in the bill.

After some vicissitudes of practice the case was brought

to a hearing on pleadings and evidence, and on the 3d of January, 1883, the court overruled the defense, and decreed in complainants' favor for the full amount claimed, being $44,507.71.

The contending parties are not at variance as to whether there is anything payable on the mortgage. On that subject there is no case at all.

The defense is (1st) that the statement in the mortgage that a consideration of $40,105.43 existed, was untrue to the extent of $19,105.43, or nearly one-half,—the actual consideration being only $21,000; (2d) that a note made at Sandusky, Ohio, on the 8th of March, 1870, by the firm of Ayres & Learned, for $3000, and payable to the order of the firm of Ayres, Learned & Wiswall, should have been credited at that date on the mortgage, and is now rightly applicable thereon.

For the purpose of a clear view of these questions it is necessary to give attention to many surrounding circumstances.

The defendants Frederick S. Ayres, Charles G. Learned and Ebenezer Wiswall were related by marriage until the death of Mrs. Wiswall, which occurred in 1874. The wives of Ayres and Learned were sisters, and Learned and Mrs. Wiswall were brother and sister. This relation had its influence in bringing the men into business connection, and it tended, no doubt, to cause them to be more confiding, and less strict and circumspect in their mutual affairs than they would have been under other circumstances. The complainants are children of Mrs. Wiswall, and they received the mortgage from her as a gift. The defendants James S. and Ebenezer R. Ayres are sons of the defendant Frederick.

Some time in 1859 Frederick S. Ayres, Charles G. Learned and Ebenezer Wiswall became engaged as partners under the name of Ayres, Learned & Wiswall, in manufacturing lumber and in some other business, at Port Austin in this State, and their principal market was at Sandusky, Ohio. They purchased the premises in question, which, for the

purpose of this case, may be called the Port Austin property, but subject to a mortgage given November 10, 1853, by William A. Howard, Rollin C. Smith and Alfred A. Dwight to Calvin P. Austin for $31,900 payable July 10, 1854, with interest at the rate of ten per cent. The members of the firm were scattered. Mr. Learned was at Port Austin, and superintended the business at that place. Mr. Frederick S. Ayres resided at Sandusky in Ohio, and gave general attention to the matter of selling the products and procuring necessary supplies, and Mr. Wiswall lived at West Troy in the state of New York, and was chiefly relied on to provide for the larger and more urgent pecuniary needs of the firm.

At a later period Ebenezer R. Ayres and one Jonas R. Learned entered into partnership under the name of Ayres & Learned. Their business was manufacturing lumber at Port Crescent in this State, and selling it at Sandusky. Their business office was at the latter place, and Frederick S. Ayres was accustomed to transact business for his firm there and was moreover expressly empowered to act for Ayres & Learned.

When the firm of Ayres, Learned & Wiswall purchased the Port Austin property, the Austin mortgage was in process of foreclosure in chancery, a bill for that purpose having been filed by D. C. Holbrook, Esq., as solicitor for Austin, in 1857. It was considered desirable that no redemption should be made and that the pending suit should be carried to a decree and sale for the purpose of making a title through the mortgage. There was another reason also for that course. A difference existed in regard to the amount of the mortgage debt. The firm estimated it at $25,438.22, but Austin claimed a little over $500 more, with the interest on it. If the case proceeded to final decree the result would settle the amount going to Austin. It was deemed expedient, however, to make an arrangement by which the mortgage title might be brought under control. But this could only be effected by putting into the hands of Austin an amount equal to the sum the firm admitted to be

due, and agreeing to pay such further sum as the decree should ascertain to be payable. The partnership was not in funds to meet so large an expenditure as $25,438.22, but was able to raise for such purpose from three to six thousand dollars. Mr. Wiswall, however, had sufficient ready means of his own to make up the deficiency, and he was willing to apply them therefor, but only on the terms that the mortgage should be assigned to his wife as a gift from him, except as to the interest paid for by the company. This scheme was carried out. October 6, 1860, the sum of $25,438.22 was paid by Wiswall and the firm. The share paid by Wiswall is one of the questions in dispute. He claims, and the complainants insist, that it amounted to $22,000. The defendants contend that it was $21,000 only. As part of the transaction an assignment from Austin to Mrs Wiswall, bearing date September 1st, 1860, was lodged with K. C. Barker, Esq., to be delivered if the amount was found sufficient; but if found not sufficient, then on payment of the ascertained deficiency. It turned out eventually that Austin was entitled to a further sum of something more than $1100, and the firm paid it, and the assignment took full effect and passed the interest. The foreclosure proceeded to a decree for sale, and the company and Mrs. Wiswall, who was represented by her husband, agreed that the firm should bid off the property and receive a conveyance directly from the commissioner, and should at the same time secure Mrs. Wiswall by mortgage for her interest. The sale took place January 6, 1869, and acting on this arrangement the firm bid off the property at $19,150, and on the 27th of the same month received the commissioner's deed, and subsequently, but under the same date of January 27th, 1869, executed to Mrs. Wiswall the mortgage in suit. It was intended to correspond with the amount of her interest in the Austin mortgage and without reference to the formal amount bid by the firm on the foreclosure sale. March 11th, 1869, the mortgage was placed on record. There was a bond also, as accompanying security, but the original instruments were both lost by Mr. Wiswall or stol-

en from him in 1870 or 1871, and have never been recovered. A second bond was given subsequently, conditioned to pay the amount legally due, and dated back to correspond with the original papers in respect to date.

March 8, 1870, the defendant Ebenezer Wiswall, being ill, and knowing that a bank at West Troy held his note for $3000, which would mature on the 17th instant, applied to Frederick S. Ayres for that amount of interest on the mortgage with which to take up the note. Ayres had no money, but he drew a note in the name of the firm of Ayres & Learned, the concern at Sandusky, for $3000, and payable at the Troy Bank to the order of the firm of Ayres, Learned & Wiswall, the Port Austin company, on three months' time. Wiswall endorsed it in the name of his firm, and the Troy Bank passed the proceeds, less the discount, to his credit. The firm of Ayres & Learned subsequently paid it and charged it over to the firm of Ayres, Learned & Wiswall as money paid to Wiswall, and the latter firm settled for and paid it in their transactions with the Sandusky company. The firm of Ayres, Learned & Wiswall, by their clerk and book-keeper, made the item a matter of charge and account in their books as a debit of Wiswall to the company. It was thus treated, in making up the accounts, as money paid by the firm to Wiswall's use, and for which he was debtor to the company. Such is the sense of the transaction as represented by their dealings and signified by their books, and there is no evidence of any suggestion prior to this suit that their account was erroneous, and that the money should be charged against the mortgage.

The partners were interested in these proportions: Ayres held a half interest in the firm, and Learned and Wiswall a quarter each. October 31, 1871, Wiswall sold out to Frederick S. Ayres, and at this time the company books showed that Wiswall was indebted to the firm in the sum of $13,732.83, which included the item of $3000 which the firm had paid to Ayres & Learned on Wiswall's account. The state and composition of this account between the firm and Wiswall, were matters which vitally concerned this transfer

from Wiswall to Ayres, and they necessarily challenged the attention of the parties. By the express terms of the bargain, the defendant Ayres assumed and agreed to pay this debt of $13,732.83, and hence this $3000 item as part of it. The whole of this indebtedness was taken out of the consideration, and the arrangement operated, therefore, as a payment of this $3000 by Wiswall to defendant Freder'ck S. Ayres.

But this is not all. Ayres expressly agreed, as part of the same trade, that the mortgage to Mrs. Wiswall was to be paid by himself and Learned, and the amount was allowed and taken out of the purchase price, and the sale was made subject to the lien. It appears that some time prior to this transaction the defendant James S. Ayres had acquired a small interest from his father, Frederick S., and had been taking part in the management, and was privy to the state of the accounts. It also appears that he was more fully recognized after Wiswall's retirement, and that the firm, as then constituted, assumed the name of Ayres, Learned & Co. Now it is certain, that before this new firm commenced, the Wiswall account had been fully settled. Of this the evidence leaves no doubt. The item of $3000 was settled with it. It ceased to exist. Wiswall paid it to Frederick S. Ayres, and Frederick S. Ayres blotted it out by accounting with those who still retained interests in the late firm. The fact that it may have slipped in to the account by misapprehension, when it should have been credited on the mortgage, affords no reason for giving it that application now. It was actually appropriated and applied in the settlement and cancellation of accounts, and its whole force legitimately spent, and it cannot be now resuscitated and appropriated again. It has no more paying ability than a bank bill that has been redeemed and destroyed. The substantial effect of what happened was that instead of Mrs. Wiswall's receiving the $3000 on her mortgage, the company charged her husband with it, and eventually collected it of him. In brief, the sum became money borrowed by

Wiswall, and the result was a repayment by him. The defendants are not out of pocket.

It was not until this suit was being commenced, and after eight years had run on the transaction, that any claim was preferred or intimated for an application of this money on the mortgage. The explanation offered is that the transfer of the item to the account against Wiswall was an unauthorized act of the book-keeper of the firm, and was not discovered until the foreclosure was threatened or begun. In any view of the case which can be supposed, the Court would be reluctant, on such an explanation, to disregard the delay and changes which have intervened, and break in upon the various settlements and adjustments which have taken place. But since the actual dealing fully disposed of the matter on grounds which took away all equity from the defendants, and nothing remains to recall or rearrange, there is no chance for any question.

October 20, 1874, Charles G. Learned and James R. Learned, who, in some way not explained, had become interested, sold out to the defendant Ebenezer R. Ayres, who agreed to pay their share of the indebtedness of Ayres, Learned & Co., as the fact appeared upon the books. It was also a part of the trade, and expressly stipulated and declared, that the mortgage to Mrs. Wiswall, for $40,105.-43, was payable by Ebenezer R. Ayres and Frederick S. and James S. Ayres ; that the same was allowed and taken as part of the purchase price on such purchase by said Ebenezer R. Ayres from said Charles G. and Jonas R. Learned, and that the sale was subject to that incumbrance. The mortgage property was now vested in the defendants Frederick S. Ayres, Ebenezer R. Ayres and James S. Ayres, subject to the incumbrance.

As we have seen, they are the parties who resist the complainants' claim, and the matter of defense on which they lay the most stress may be here taken up. Their objection is that the mortgage was given for too large a sum. In view of the circumstances, it is not admitted that these parties have any right to question the accuracy of the orig-

inal consideration as stated in the mortgage. The object of
the suit is to enforce payment of the security in exact ac-
cordance with its express provisions. Frederick S. Ayres,
being one of the three mortgagors, became, as we have seen,
a grantee of Wiswall,—one of the other two,—under an ex-
press covenant that he would pay the mortgage, and was
allowed to retain from the purchase price a full considera-
tion ; and the evidence is satisfactory that the arrangement
applied to James S. Ayres, and that his interest was identi-
fied with his father's. Subsequently Ebenezer R. Ayres
became, as we have also seen, a grantee of the Learneds on
the same terms. These persons knew what sum the mort-
gage professed to secure, and on an adequate consideration
they assumed whatever remained of it. There is no want
of privity or any appearance of fraud. It would seem diffi-
cult to withdraw the question from well-settled principles,
and allow the defendants to repudiate the security in a point
actually covered by the assumption of it.

But, as the case is open to broader considerations, this
point may be left undetermined. The facts are, however,
present, and cannot be put aside. They have a direct bear-
ing on the merits of the attack against the consideration as
expressed in the mortgage. The nature of the defense, the
situation and relation of the parties, and the character of the
transactions implicated, rendered it expedient for the de-
fendants to bring forward, seasonably and fairly, whatever
written evidence was in their power.

The presumption of mere fact is that the representation
of the debt given in the mortgage by the parties to it was
not false, but true, and nothing short of clear and cogent
evidence could establish the contrary.

A further observation may as well be made here. The
inference is very pointed that the old books of Ayres, Lear-
ned & Wiswall would shed considerable light upon the
matter in dispute. The defendants were requested to pro-
duce them, and did not. They now criticise the nature of
the request and the occasion of it, and seek to excuse or pal-
liate the omission as though the result was only a possible

loss of evidence to complainants. But this is not a correct view. The very position of the defendants prescribed the production of the books as an act of candor and fairness, and also as a measure of self-protection against those unfavorable presumptions which arise from the non-production of evidence in such cases. The doctrine is elementary, and citations are unnecessary.

The circumstance that first challenges attention on the statement of the defense is the magnitude of the alleged error.

Had the discrepancy been a comparatively small amount, it would not be very difficult to imagine that an inaccuracy had occurred which did not reveal itself, and passed without being detected. But it seems hardly credible that in making up a transaction of $40,000, an error could creep in of more than $19,000, and not be found out, or at least suspected, by the vigilant men of business who were concerned And when the fact is recalled that Frederick S. Ayres and Charles G. Learned retained the mortgage several weeks for execution, with ample time for examination and reflection, we find additional ground for disbelief. The form of the amount is not wholly unimportant; it is not a round sum. It gives the impression that it was obtained by calculation and with some deliberation, and not by a lumping process and in a hurry. Both sides have endeavored to support their respective theories by applying particular methods of computation, but nothing decisive has been gained. The experiments have shown that a sum nearly equivalent to that in the mortgage may be obtained on the theory of either side. As the defendants have the burden of proof, it makes somewhat against them that this test is harmless to complainants.

We have seen that the mortgage was given in January, 1869, and was suffered to run for a period of more than ten years before this attempt to foreclose. During this long period nine several payments were made, aggregating more than $30,000, and many communications, oral and written, were interchanged in relation to the mortgage. In many

ways more or less direct, and on numerous occasions, it was recognized as a valid incumbrance, according to its terms; and in this connection we may recall the transactions in which the payment of it was deliberately assumed. Along with these positive and important acts running through ten years, there is the further circumstance that the amount of consideration was never in any manner questioned until the complainants insisted on having the matter closed up; and then the objection originated with counsel, and not with the defendants.

After the lapse of so many years, and when the early transactions in which the mortgage originated have become obscure, the explanations which were once practicable have become impossible. The memories of the chief actors have grown dim, and no satisfactory relation of the things which they well understood when the mortgage was made can be drawn from them now. The papers which they made the evidence of their affairs, and their particular acts and general conduct in reference thereto, are greatly preferable to statements called out by this controversy, and at variance therewith. And it is much to be regretted that the old books were not produced for inspection. Their absence is a circumstance against the defendants, but the fact is of no great consequence as the case is situated. Upon a careful review of all the circumstances it is not possible to say that the defense is made out.

Some points have not been mentioned. The stamping of the mortgage is one. And there are suggestions on the part of the defense not expressly noticed. It seems unnecessary to extend this opinion for the purpose of following out the able arguments from the bar. No better exposition can be found than what appears from a history of the case.

The decree should be affirmed with costs.

The other Justices concurred.