## CADY *v.* BURGESS.

1. WITNESSES — COMPETENCY—TRANSACTIONS WITH PERSON SINCE DECEASED.

Where, on a bill by the administrator of the estate of a deceased wife against her surviving husband for an accounting, and to have a deed from her to him declared a mortgage, and the amount due thereon ascertained, the only evidence tending to support the allegation of the bill that the deed was given as security is certain admissions of the husband made while testifying in another case, his whole testimony in that case is admissible, and he is a competent witness as to the entire of his transactions with decedent.

2. MORTGAGES—CONSIDERATION—DEED ABSOLUTE IN FORM — PRESUMPTION—AMOUNT DUE.

Though, in the absence of evidence to the contrary, a presumption of fact obtains that the sum mentioned in a mortgage as the consideration therefor is correctly stated, where the defendant in a bill to have a deed declared a mortgage, and the sum due thereon ascertained, admits that the deed was not given to secure an ascertained indebtedness, but to secure the payment of such sum as should afterwards be found due upon an accounting, the burden is upon him, the grantor being dead, to show what that sum is.

3. SAME — EVIDENCE — CONFIDENTIAL RELATIONS — BURDEN OF
   PROOF.
   Where, on a bill by the administrator of the estate of a de-
   ceased wife against her surviving husband to have a deed
   from her to him declared a mortgage and the amount due
   thereon ascertained, defendant claims that the considera-
   tion for the deed was in part a certain bill of sale given her
   by him, and it appears that at the time of executing the deed
   she was in a helpless physical condition, and mentally weak,
   and could communicate with others only through the medium
   of defendant who pretended to understand her, the relation
   of trust and confidence established imposes on defendant the
   burden of showing, not only the true consideration of the bill
   of sale and deed, but that his transactions with decedent
   were fair and honest, and that there was no abuse of her
   confidence.

4. SAME—EVIDENCE—SUFFICIENCY.
   On a bill to have a deed absolute in form declared a mortgage,
   and the amount due thereon ascertained, evidence examined,
   and *held*, to show that the deed was a mortgage, and that
   nothing was due thereon.

Appeal from Chippewa; Steere, J.   Submitted April
6, 1906.   (Docket No. 20.)   Decided July 3, 1906.

Bill by George A. Cady, special administrator of the
estate of Augusta Brown Burgess, against John W. Bur-
gess, Charles O. Stratton, and Cora J. Stratton for an
accounting.   From the decree rendered, complainant
appeals.   Modified.

*Warner & Sullivan*, for complainant.

*Oren, Webster & Carleton*, for defendant Burgess.

BLAIR, J.   Complainant filed the bill of complaint in this
suit, as special administrator of the estate of Augusta W.
Brown-Burgess, for an accounting between said estate and
the defendant Burgess, and to have a certain deed from
decedent to said Burgess determined to be a mortgage and
the amount due thereon, if anything, ascertained.   Bur-
gess became acquainted with Mrs. Augusta W. Brown
about the year 1891, and soon thereafter began to main-

tain illicit relations with her, and they lived in lewd and lascivious cohabitation up to the time of their marriage, October 20, 1898. Mrs. Brown was a woman of considerable property; her net income for 1899 being about $2,000. She was a woman of good business qualifications and made prudent investments. The defendant Burgess came to the Soo in 1887 with $1,632.51. in money, which, in 1889, he invested in the livery business. He was a man of dissolute habits, given to excessive drink, and not the kind of man who would be likely to accumulate property. He executed a bill of sale of the livery business March 20, 1896, to Mrs. Brown, and from July, 1896, to the death of his wife in May, 1900, he was engaged in no business on his own account. Some time in 1897 Mrs. Brown was taken seriously ill and went to Mt. Clemens for treatment. In July or August, 1898, Burgess took her to Chicago, and from that time they were out of the State of Michigan the greater portion of the time till her death. After July, 1898, and probably before that time, Mrs. Brown was in a critical condition, and had to have some one to transact her business for her. On December 20, 1899, Mrs. Brown, then defendant's wife, was declared by the probate court of Chippewa county to be mentally incompetent to have charge of her property, and a guardian was appointed. It was, however, determined in this decree that she was competent at the time of her marriage to contract the marriage, and the decree has been held conclusive of that fact. *Burgess* v. *Stribling*, 134 Mich. 33. During the greater portion of the time from 1897 until her death, she was unable to walk, unable to talk plainly, and unable to use her hands, and defendant had practically the entire care of her. She died May 7, 1900, of softening of the brain due to syphilis. Her method of transacting business after her marriage is shown by the testimony of defendants' witness, Metzger, who took charge of her property after she left for California in January, 1899.

" Her method of conveying what she wanted to say to me was to first make Burgess understand, and then Burgess would give me to understand what he understood from her, and the only way she could communicate to me any idea originating with herself was through Burgess, and, when she wanted to open a conversation or communicate any original thought, she would look at Burgess and attempt to say something. He would watch her mumble, and then repeat his understanding of what she said. She would mumble or attempt to say something, and in these attempts would not articulate any word that I would understand, but sometimes I could understand a letter, not altogether. Independently of Mr. Burgess, she could not make me understand sufficiently so that I would be able to guess what she meant had I been alone with her."

Mrs. Brown began loaning money to Burgess, March 12, 1891, when she loaned $1,500 on chattel mortgage security to the firm of Lennox & Burgess. From this time on there were numerous transactions between them, and it is conceded by his counsel that on March 20, 1896, Burgess was indebted to Mrs. Brown in the sum of $300 or $400. It is also agreed by counsel that the accounting should begin with the last-mentioned date. The evidence presented in the record as the basis for the accounting consists, in the main, of bank books, checks, check stub books, notes, bills of sale, deeds, and memoranda, which are quite vague, incomplete, and unsatisfactory. Counsel for complainant also read in evidence, as admissions, extracts from the testimony of Burgess given at the hearing of the case of *Burgess* v. *Stribling*, supra. Upon complainant's resting, defendants' counsel called Burgess as a witness, and, against complainant's objection, examined him upon the whole case. Defendants' counsel also offered in evidence the complete testimony of defendant Burgess on the former trial, from which complainant's counsel read extracts. This last testimony is not printed in the present record, but we are referred by counsel to the record in *Burgess* v. *Stribling*, supra.

It is contended by counsel for complainant that the testimony of Burgess is incompetent, under section 10212, 3

Comp. Laws. Defendants' counsel contend that his testimony was admissible under the rule laid down in *Fox* v. *Barrett's Estate*, 117 Mich. 162; *Lange* v. *Klatt*, 135 Mich. 262. We think the contention of defendants' counsel must be sustained. The instrument which complainant seeks to have declared a mortgage was in form a warranty deed, conveying 40 acres of land, purporting to have been executed July 23, 1897, for an expressed consideration of $2,000, and recorded January 4, 1899. The only evidence presented by complainant to sustain his claim that the deed was given as a security was the admission of defendant in his testimony in the *Stribling Case*, as follows:

"I got the deed to this farm in July, 1897. I did not at that time and never had a settlement with Mrs. Brown. The deed was given to secure me until such time as we had a settlement. I do not know exactly how much Mrs. Brown owed me at that time. I think she would owe me $1,500. I never had reason to find out how much she owed me. It was not my suggestion that she give me the deed to this property. She gave it to me without my knowing she had it made out. I was not present when it was made out, and never talked over the transaction with her before the deed was made. I had talked to her about wanting security before that time for what she owed me, but not about this particular piece of property. I didn't have a great deal of money at that time."

Complainant also read in evidence from the former case the following as an admission:

"*Q.* Do you know how much she owed you at the time she died?

"*A.* Not exactly.

"*Q.* Know anywhere in the neighborhood?

"*A.* No."

These admissions and others, read in evidence by the complainant, went to the merits of the entire case made by the bill, and without them complainant could not have sustained his bill at all as to the mortgage character of the deed. The case is not distinguishable in principle from the cases above cited.

The learned circuit judge made a decree finding that the above-mentioned deed was given as a security for the payment of an indebtedness of $2,000, upon which there was due $1,300. Complainant has appealed to this court. Counsel for defendant Burgess state that:

"The circuit court took the view that the consideration expressed in the deed, viz., $2,000, was a virtual acknowledgment by Mrs. Brown that her debt was at least the amount she had voluntarily expressed in the instrument as its consideration, and to that extent the amount of decedent's debt to Mr. Burgess was established by competent testimony."

We are unable to concur in this conclusion. Undoubtedly, a presumption of fact obtains, in the absence of evidence to the contrary, that the sum mentioned in a mortgage as the consideration therefor is correctly stated. *Wiswall* v. *Ayres*, 51 Mich. 324. But in this case the defendant himself overthrows the presumption. In his previous testimony, he admitted that Mrs. Brown did not owe him $2,000 at the date of the deed, and that he did not "know anywhere in the neighborhood" of how much she owed him at the time of her death. He further testified in the *Stribling Case:*

"That 40 acres deeded me is worth $1,300. It was given me to secure an indebtedness, but I couldn't tell how much the indebtedness was."

He does not pretend in this record to state what the indebtedness was, but claims that he repeatedly asked for a settlement to determine the amount, which he was unable to obtain. According to his testimony, the mortgage was not given to secure an ascertained indebtedness, but to secure the payment of such sum as should afterwards be found due upon an accounting, and, under such circumstances, the burden was upon him to show what that sum was.

The only plausible basis for an inference that she owed him anything at the time of making the deed or at the time of her death must be found in his unsupported

statement that she owed him the value of the livery stable property transferred by him to her by bill of sale March 20, 1896, to secure the payment by him of one-half of the purchase price, advanced by her, of certain real estate known as the " Mission property," and deeded to them jointly on April 16, 1896; that, being unable to pay his part of the purchase price, he conveyed his interest in the lands to her on May 15, 1896, and thereupon the consideration for the bill of sale failed, and she agreed to account to him for the property. In the *Stribling Case,* Burgess testified as to this bill of sale, as follows:

"About this time I had borrowed some money from her —several hundred dollars—and I got in ill health, and I gave her a bill of sale of what I had. Just gave her a bill of sale of it. It was not my property after that. That bill of sale was given to secure the debt I owed her. 1 am sure about that. Wè bought the Mission property together. She and I bought that property together, but she furnished the money. I had something like $2,500 standing out at that time, and I expected to be able to collect it, and I bought the property on the strength of that, and when I could not do it—yes, sir; I bought the property on the strength of my outstanding accounts and paid for it in that way. Mrs. Brown furnished the money. I don't remember whether I transferred the outstanding accounts to her or how that was fixed. It was bought in our joint names and I afterwards transferred my interest to her when I found I couldn't collect what I expected to."

There was no distinct claim in that case, as in this, that the bill of sale of March 20, 1896, was given to secure the payment by Burgess of his portion of the purchase price, but the natural inference is that he " paid for it " with the accounts, which were not covered by the bill of sale at all but retained by him, and that the bill of sale was given to secure an existing indebtedness independent of the purchase of the Mission property, which was not purchased till April 16, 1896, nearly a month afterwards. After the bill of sale of the livery stable property, Burgess worked for Mrs. Brown for wages, and on March 10, 1897, she sold the major portion of the property for $1,700 for

her own use. The livery stable property represented substantially all of Burgess' property. It is quite singular, to say the least, that he should not have insisted upon a return of his property, if his testimony is true, after the failure of the consideration, or of some evidence of his interest in it.

Mrs. Brown, when Burgess went to live with her in 1894, was a comparatively well to do woman, a money loaner, while he was a man of slender means, of dissolute habits, and a borrower. His relations to her naturally gave him a great influence over her, and after 1897, and until the appointment of a guardian, I am satisfied that he practically had charge of her affairs. Mrs. Brown paid the household expenses, Burgess paying nothing in any way, and she bore the expenses of both outside the State. He admitted upon the witness stand that, since July or August, 1898, she "had to have somebody to do her business for her," and that he had verbal authority to sign her name to checks. He had access to all of her private papers and books of account, and they were under his control for two or three weeks after her death. Among these books was one book which contained his account with her, and this book he claimed he could not find after her death, and did not know what had become of it. The basis of the indebtedness claimed to be secured by the deed rests upon his unsupported testimony as to the consideration for the bill of sale of the livery property, and every act of his with reference to that property disputes his claim that that bill of sale was a security. His claim that he was unable to get a settlement with Mrs. Brown is not consistent with his relations to her as disclosed by the record, and there is no good reason why, if she was indebted to him, he should not be able to state with reasonable accuracy what that indebtedness was. He states repeatedly that he does not know what the amount of the indebtedness was which was secured by the deed, and there is room for doubt upon the record whether the deed had ever been delivered to Burgess, and

whether Mrs. Burgess ever ordered it to be recorded or had sufficient mental competency so to do in January, 1899. Burgess admits that the deed was made without his knowledge, and it was not recorded till January 4, 1899, and then was recorded by Metzger, as he claims, by Mrs. Burgess' directions. The fair inference from his testimony is that he found this deed among her papers and asked her what should be done with it, although Burgess was present. He says she told him to record it, that it belonged to Burgess. The extract from his testimony hereinbefore given will explain how she told him.

The influence which Burgess possessed over this woman, her helpless physical condition, and her feeble mental condition, the trust and confidence necessarily reposed in Burgess, cast upon him the burden of showing not only the true consideration of the bill of sale and deed, but that his transactions with her were fair and honest, and that there has been no abuse of her confidence. *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341.

I think he has failed to discharge the burden of proof, and that it must be held that no sum has been shown to be due upon the security, and that the same should be canceled. The defendant, having failed to show that there was anything due upon the alleged mortgage indebtedness, must account for the income derived by him from the mortgaged premises, shown by the record to be $125 per year, from the date of his wife's death, with interest at 5 per cent. He must also account for the avails of the $400 mortgage on the Stratton farm, with interest at 7 per cent. from the date thereof, and for the amount of the $300 check of March 8, 1898, with interest at 5 per cent. from that date.

A decree may be entered in accordance with this opinion, with costs of this court to complainant and appellant against the defendant John W. Burgess.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.