### MILLER v. ASHTON.

1. EVIDENCE—BILLS AND NOTES—MORTGAGES—CONSIDERATION.

The consideration for a note secured by a mortgage, as between the parties thereto, may always be inquired into.

2. MORTGAGES—CONSIDERATION—PRESUMPTIONS.

The presumption of mere fact is that the representation of the debt given in a mortgage by the parties to it was not false, but true, and clear and cogent evidence is required to establish the contrary.

3. BILLS AND NOTES—MORTGAGES—CONSIDERATION—PREPONDERANCE OF EVIDENCE.

That the consideration for a note secured by a mortgage is other than that expressed therein, need only be established by a preponderance of the evidence.

4. MORTGAGES—USURY—CONSIDERATION—EVIDENCE—SUFFICIENCY.

In a suit to enjoin the foreclosure of a mortgage, plaintiff's claim that, while the consideration stated therein was $27,500, the actual consideration was only $20,000, *held*, not established by the proofs, especially in view of the fact that there is no explanation as to why plaintiff did not obtain a loan from another person on more favorable conditions; there being no suggestion that the security was not adequate therefor.

5. SAME—MORTGAGEE MAY NOT CHARGE SERVICE FEE—INTEREST.

A mortgagee may not legally charge a service fee for examining the property to be mortgaged or passing upon the sufficiency of the title, or for any expense deemed necessary and incurred by him in determining whether he will make the loan, since these are but the usual incidents to the mortgaging of real estate, and are included in the rate of interest stipulated for in the mortgage.

6. SAME—HOLDER IN DUE COURSE.

Where the assignment of a mortgage bears date as of June 11th, when the mortgagor was in default in making payment, but was not recorded until September 21st of same

---

[1]Evidence, 22 C. J. § 1559; Mortgages, 41 C. J. § 213 (Anno); [2]Mortgages, 41 C. J. §§ 212 (Anno), 214; [3]Bills and Notes, 8 C. J. § 1359 (Anno); Mortgages, 41 C. J. § 214; [4]Mortgages, 41 C. J. § 214; [5]Usury, 39 Cyc. p. 982; [6]Mortgages, 41 C. J. §§ 716, 718.

year, and foreclosure proceedings were begun five days thereafter without any notice to or demand upon the mortgagor, who claims to have turned over to the mortgagee securities and a check sufficient to make up the face value of the mortgage, the assignee was not a holder in due course, under 2 Comp. Laws 1915, § 6093.

7. SAME—NOTICE OF INFIRMITY.

The presumption that the purchaser of a note secured by a mortgage purchased with notice of the infirmity in the security, *held*, not overcome by his proofs.

8. SAME—INJUNCTION—FORECLOSURE—EQUITY—INTEREST.

Where a mortgagor comes into a court of equity to restrain the foreclosure of a mortgage claimed to be usurious, without offering to pay the amount found due, and the court finds that there was included in the consideration for the mortgage an illegal charge for mortgagee's services, a decree is entered setting aside the foreclosure proceedings and fixing the amount of plaintiff's liability with interest thereon at the rate of five per cent.

9. COSTS—EQUITY.

One who seeks relief in a court of equity without offering to do equity, is awarded no costs, on appeal, although the decree of the court below dismissing his bill is reversed, where he is required to do equity.

Appeal from Wayne; Smith (Guy E.), J., presiding. Submitted October 11, 1927. (Docket No. 70.) Decided December 1, 1927.

Bill by Frank P. Miller against Edward P. Ashton to enjoin the foreclosure of a mortgage. From a decree dismissing the bill, plaintiff appeals. Reversed.

*Albert McClatchey, Firmon Lush* and *Harry J. Weber,* for plaintiff.

*C. W. Videan,* for defendant.

SHARPE, C. J. On December 4, 1925, plaintiff gave his note to W. G. Arthur Reid in the sum of $27,500,

---

[7]Mortgages, 41 C. J. § 737 (Anno); [8]Id., 41 C. J. § 1366 (Anno); [9]Costs, 15 C. J. § 637 (Anno).

and to secure the payment thereof executed a mortgage on certain real estate then owned by him in the city of Detroit. The amount thereof was payable in monthly installments of $500 each, the whole sum to be due and payable in two years from the date thereof. On June 11, 1926, Reid assigned the mortgage and note to the defendant. At that time several of the monthly payments were due and unpaid. On September 25, 1926, defendant began foreclosure proceedings by advertisement, pursuant to the statute. Before the sale was had thereunder, plaintiff filed his bill of complaint herein, alleging that the actual amount secured by the mortgage was $20,000; that the sum of $7,500 thereof was a bonus exacted from him by Reid at the time it was given, and praying that defendant be enjoined from proceeding further with the foreclosure proceedings. A temporary injunction was granted, but later dissolved. The bill did not contain any offer to pay the amount then due on the mortgage. A sale was had, and the property was bid in by defendant for the amount claimed to be due and deed executed to him by the deputy sheriff. The trial court was not satisfied that the consideration of the note and mortgage was not as expressed therein, and dismissed the bill of complaint. Plaintiff appeals.

The plaintiff for many years had been engaged in the real estate and building business, dealing considerably in subdivision properties. He testified that he had "handled millions of dollars' worth of property." It appears that on April 27, 1923, certain lots in the Mulberry Hill subdivision in the city of Detroit (about 95 in number), owned by plaintiff, were mortgaged by Peter A. Miller, in whom the title stood, at plaintiff's request to Reid to secure the payment of $78,000. In the mortgage Reid agreed to release certain lots from the effect thereof on specified payments being made therefor. Most of these lots had been sold prior to

December 4, 1925, the date of the mortgage here involved.    Certain releases had been secured and some of the lots sold, subject to the mortgage.    Reid had himself made certain collections at plaintiff's request. At that time the mortgage was past due.    Plaintiff was also indebted to Reid for taxes paid by him, and also on what is spoken of as the Baltimore mortgage. On December 4, 1925, the parties met in Reid's office and had an accounting.    As a result thereof, plaintiff executed the mortgage for $27,500 and Reid gave him  a  check  for  $7,736.43.    Plaintiff admits that he kept no book account of his dealings with Reid, but he presents figures, which he claims were considered on such accounting, which indicate that the indebtedness secured by the mortgage was but $20,000.    His claim in this respect is somewhat corroborated by the testimony of his stenographer, who claims to have been present.    Reid testified that he had not kept the figures used on the accounting, which involved many items, some of which were in dispute.    He admits that he took credit therein for services which he had rendered the plaintiff in appraising the lots and making collections for him, but insists that no bonus entered into the sum as stated in the note and mortgage.

The consideration for a note secured by a mortgage, as between the parties thereto, may always be inquired into.    But, as was said in *Wiswall* v. *Ayres,* 51 Mich. 324, 332:

"The presumption of mere fact is that the representation of the debt given in the mortgage by the parties to it was not false, but true, and nothing short of clear and cogent evidence could establish the contrary."

Of course, it need only be established by a preponderance of the evidence.    *Badalow* v. *Bogosoff,* 229 Mich. 299.    To sustain plaintiff's claim, we must find that he executed this note and mortgage for $27,500

241—Mich.—4.

the next day after he and Reid had met and by an accounting determined that the amount of his indebtedness, including the cash he was then to receive, was but $20,000. The amount of the claimed bonus, $7,500, in its proportion to the debt, is so large as to shock the conscience and to cause serious doubt whether a man of plaintiff's business experience would execute a note and mortgage in which it was included. No matter how pressing his necessities, if the security was adequate, and there is no suggestion that it was not, he could surely have obtained a loan from some other person on more favorable conditions. The only other explanation of his conduct in doing so is that he fully understood that he could be required to pay but $20,000 and that he was willing to acknowledge in writing an indebtedness which he knew did not exist and for which he could not be held liable. An honest business man would not want to so stultify himself, and we are unwilling to do so.

Reid was apparently unable to state the particular items which entered into the accounting. He kept no account of the transaction in a book. He claims that certain releases of lots in the Peter Miller mortgage for which he had not been paid were taken into account and charged to plaintiff. He does, however, admit that he charged plaintiff with a service fee of $2,500 to cover "principal and necessary expenses that I had in arriving at the value of the building that was mortgaged." His testimony is suggestive that he was advised that he had a right to do this.

This leads us to infer that the holding of this court in *Federal Bond & Mortgage Co.* v. *Burstein,* 222 Mich. 88; is being misconceived. It was decided in that case that the service which the plaintiff company undertook to render in disposing of a bond issue, seeing to it that the payments made were applied to the purchase of materials and the payment of labor, and

rendering other service to protect the purchasers of the bonds secured by the mortgage, was not. "a mere subterfuge for the purpose of exacting and collecting an illegal rate of interest on the loan." This holding in no way supports the claim that a mortgagee may charge a service fee for examining the property to be mortgaged, or passing upon the sufficiency of the title, or for any expense deemed necessary and incurred by him in determining whether he will make the loan. These are but the usual incidents to the mortgaging of real estate, and are included in the rate of interest stipulated for in the mortgage. See *Continental Nat. Bank* v. *Fleming,* 170 Mich. 624, and cases there cited.

The defendant claims to be a holder in due course. While the assignment of the mortgage to him bears date June 11, 1926, it was not recorded until September 21st of that year, and the foreclosure proceedings were begun five days thereafter and without any notice to or demand upon the plaintiff. On June 11th there was default in the payment of a number of the monthly installments. He claims to have turned over securities to Reid in the sum of $26,450, and to have given him a check for $550, thus making up the face value of the mortgage. The mortgage provided:

"That the whole of said principal sum shall become due and payable after default for more than 30 days in the payment of any installments of principal or interest upon said indebtedness."

He was therefore not a holder in due course. 2 Comp. Laws 1915, § 6093. Neither do we think that he has overcome the presumption that he purchased with notice of the infirmity in the security. *Thompson* v. *Village of Mecosta,* 127 Mich. 522, 528. He testified:

"The substance is that I did not look it up, but took Mr. Reid's word for it. * * * I did not see the mortgage before I purchased it. I took Mr. Reid's

word that the mortgage was all right. * * * I was depending on Mr. Reid's advice in the matter."

There is no offer in the bill of complaint to pay the amount found to be due on the mortgage. The prayer asks only that defendant be restrained from proceeding further in the foreclosure proceedings. No affirmative relief is prayed for in the answer.

A decree may be here entered setting aside the foreclosure proceedings had by advertisement and fixing the liability of the plaintiff on the mortgage at $25,000. As plaintiff has come into a court of equity asking relief, he will be required to pay interest on that sum at the rate of five per cent. per annum. There having been no offer on the part of the plaintiff to do equity, we think no costs in either court should be awarded to him.

BIRD, FELLOWS, CLARK, and MCDONALD, JJ., concurred. WIEST, J., concurred in the result. FLANNIGAN, J., did not sit.

The late Justice SNOW took no part in this decision.