### SMITH v. HEINZE.

1. CONTRACTS—WELL-DRILLING—FINDING OF COURT.

In suit to cancel mortgage, remove cloud on title, for repayment of money and for injunctive relief against well driller, evidence sustained finding of trial judge that plaintiffs accepted offer of defendant to produce a well guaranteed to be sufficient for plaintiffs' 80-acre farm or drilling would be for nothing.

2. SAME—WANT OF CONSIDERATION.

Under contract to drill a well guaranteed sufficient for plaintiffs' 80-acre farm, and in default thereof money advanced and mortgage given would be returned, where such a well was not produced there was a total want of consideration for mortgage given and advancements made.

3. APPEAL AND ERROR—FRAUD—FAILURE OF CONSIDERATION—QUESTIONS REVIEWABLE.

No consideration is given to alleged failure to prove fraud in suit to cancel a mortgage and recover advancements made on well-driller's contract where decision in favor of plaintiff in trial court was based solely on failure of consideration.

4. CONTRACTS—CONSIDERATION—ORAL TESTIMONY.

Oral testimony was admissible to show lack of consideration under oral contract whereby defendant well driller was to be

---

Parol proof of consideration, see 1 Restatement, Contracts, § 240.

paid a given sum per foot to furnish a well guaranteed to be sufficient for needs of plaintiffs' 80-acre farm, upon which plaintiff made certain advancements and executed a mortgage as security for payment of balance.

5. EQUITY—JURISDICTION.

An equity court has jurisdiction of subject matter of suit to cancel a mortgage and for injunctive relief and money decree to recover advancements made under contract where there is a failure of consideration for mortgage executed and advancements made.

Appeal from Benzie; Lamb (Fred S.), J. Submitted March 25, 1943. (Docket No. 112, Calendar No. 42,123.) Decided May 18, 1943.

Bill by Clyde U. Smith against William Heinze and Imogene, his wife, for cancellation of a mortgage, removal of cloud on title, and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*M. G. Paul,* for plaintiff.

*Meggison & Menmuir,* for defendants.

NORTH, J. Under circumstances hereinafter stated Clyde U. Smith, herein referred to as plaintiff, and his wife gave to William Hugh Heinze, herein designated as defendant, and his wife a mortgage for $237.50 on plaintiff's 80-acre farm; and plaintiff also paid to defendant $150. On the alleged grounds of fraud, misrepresentation and total failure of consideration, plaintiff seeks cancellation of the mortgage, removal of cloud upon title to his farm, repayment of the $150, and injunctive relief. After hearing on the merits the relief sought was granted, and defendant has appealed.

In 1938 defendant approached plaintiff relative to drilling a well on plaintiff's farm. There was no well on the property, and for his stock and other farm needs plaintiff hauled water three miles. The

going price for drilling was a dollar per foot; but plaintiff was unwilling to contract for the work unless defendant would guarantee a well with sufficient water to meet the needs of plaintiff's farm. Defendant insisted that if he was to guarantee the desired result the drilling price would be $1.50 per foot. The parties entered into an oral agreement for the drilling of the guaranteed well at $1.50 per foot, plaintiff to have three years in which to pay for same but security for payment was to be given.

About November 1, 1938, defendant began drilling, but at a depth of approximately 50 feet work was suspended until the following April when drilling was resumed to a depth of 242 feet. At this depth the well was pumped. Evidently there was uncertainty as to whether the quantity of water obtainable was satisfactory. It was tried out with a three-way force pump. Defendant claims that at this point the well was completed and was satisfactory or O.K.'d by plaintiff. But plaintiff claims there was not a satisfactory flow of water and that the well was never completed. Plaintiff testified (though defendant denied) that at this stage of the undertaking defendant said:

"That is the poorest well I ever put in, but I think it will get a lot easier after you have worked it a while, and you may be better satisfied, but I can't do very much more with the present equipment I have got, but I am going to get a power outfit."

In April, 1939, plaintiff made two payments of $50 each to defendant. But plaintiff testified, in direct conflict with defendant's testimony, that incident to each of these payments plaintiff was assured by defendant he could produce water in the well and "if he didn't make good" he would return the payments, and that defendant then admitted:

"I know that this well doesn't produce the water that you need." On June 3, 1939, plaintiff and his wife went to a bank in Honor and executed the mortgage in suit which was prepared by the banker. It was for $237.50, payable three years from date, interest 5 per cent. per annum, and was recorded June 5th. Concerning the giving of this mortgage a disinterested witness corroborated the testimony of plaintiff and his wife by testifying in substance that defendant told plaintiff he had to have money to go on with the work and that if plaintiff would make out a mortgage and place it in the bank, it would help defendant's credit at the bank. Plaintiff says that defendant agreed that he wouldn't dispose of the mortgage, and that he agreed to return the mortgage in case he didn't supply plaintiff with sufficient water to meet plaintiff's needs. On September 21, 1939, plaintiff paid $50 to apply on the mortgage.

As a witness for defendant, a farmer named John Hopkins testified that he tried the well in the summer of 1939, and while it pumped hard, he had no trouble getting water; and that when he spoke to plaintiff about the well the latter made no complaint. And defendant and his wife testified that in the fall of 1939 plaintiff said the well was then working fine.

But in the spring or summer of 1940 plaintiff complained to defendant that the well did not provide an adequate supply of water. In June or July defendant went to inspect the well, found that it pumped hard and it was possible to get only one-third of the desired supply of water. There was talk between the parties about drilling deeper, for which defendant was to be paid $1.50 per foot if he got the required supply of water; but the testimony is in conflict as to why an agreement of that nature was not carried out. Defendant did in fact sink the well 12 or 15 feet deeper; but shortly thereafter

he withdrew his working equipment from the well and nothing further was done.

There is much conflict in the testimony produced by the parties as to the details of their respective claims. Relative to the contract itself, the defendant testified:

"The terms of this agreement were if I didn't get water it would cost him nothing, and if I did get water, he was to pay $1.50 a foot. There was nothing said about any time limitation or any guarantee or anything of that sort. You cannot guarantee that a well, once drilled, will stand up for any particular time. * * *
. "The kind of a well we got there in April of 1939 I would say was a fair well."

But the record amply sustains the finding of the trial judge that the contract arose from plaintiff's acceptance of the following proposition by defendant:

"If you will give me $1.50 a foot, I will furnish all the necessary materials below ground, drill you a well, and if it fails to furnish a good flow, sufficient for your farm needs, I will drill it for nothing, it will cost you nothing."

And the trial judge further found:

"that the mortgage was agreed upon by the said plaintiff, on condition that the well was to be put down as agreed and represented by the said defendant, and that in default of his drilling the well as represented heretofore, the money advanced and the mortgage was to be given back and the mortgage cancelled. * * *
"Under the facts as found from the testimony there was at least a total want of consideration for the real-estate mortgage and also for the money advanced by the plaintiff to the defendant."

There is no merit to appellant's contention that the trial judge's findings of fact were contrary to the evidence. Nor need consideration be given to appellant's assertion that the fraud alleged in the bill was not proven, because decision in the trial court was based solely on failure of consideration. Notwithstanding appellant's contention to the contrary, the circuit judge did not commit error in receiving oral testimony as to what constituted consideration for the mortgage. This was not in violation of the general rule that contemporaneous oral agreements may not be proven for the purpose of contradicting or varying the terms of a written contract. In a case of this character oral testimony is admissible to show lack of consideration. *Brown* v. *Smedley,* 136 Mich. 65; *Miller* v. *Ashton,* 241 Mich. 46. Under the pleadings and proofs the equity court had jurisdiction of the subject matter of litigation; and our review of the record discloses no justification for disturbing the decree entered. It is affirmed, with costs to appellees.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.